IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| SUNRISE RENTALS ENTERPRISES, et al., | * * * | |
| Plaintiffs, | * * | |
| v. | * * * | CV-10-00261-WS-M |
| BP, PLC, et al., | * * | |
| Defendants. | * | |

**BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Cameron International Corporation ("Cameron") respectfully submits this brief in support of its motion to dismiss the Class Action Complaint (the "Complaint") filed in this case (hereinafter cited as "Compl.") for failure to state a claim upon which relief can be granted against Cameron. See Compl. [Doc. 1.]

**SUMMARY OF ARGUMENT**

All of the property and lost profits damage claims asserted in the Complaint are specifically addressed by the liability and claims payment provisions of the Oil Pollution Act of 1990 (hereinafter "OPA"), 33 U.S.C. § 2701 et seq. Under OPA, the named Plaintiffs were required to present their damage claims to one or more "responsible" parties as designated under OPA. "Notwithstanding any other provision or rule of law," OPA makes any such responsible party liable to pay claims for the damages sought in the Complaint, and provides for recovery against the Oil Spill Liability Trust Fund for any claim or portion of a claim not paid by a responsible party. These comprehensive and

exclusive statutory remedies preclude Plaintiffs' claims against Cameron because it is not a designated responsible party. For this reason, the claims against Cameron in the Complaint should be dismissed without prejudice.

In addition, the conclusory allegations in the Complaint do not satisfy the *Twombley/Iqbal* standards for pleadings under the Federal Rules of Civil Procedure recently explained by the Supreme Court. The Complaint's allegations are not adequate to survive dismissal because they contain only labels and conclusions and naked assertions that are devoid of factual enhancement.

## KEY ALLEGATIONS IN THE COMPLAINT

For purposes of Cameron's motion, the following are the critical allegations in the Complaint.

The Complaint alleges an explosion and oil spill from the Deepwater Horizon mobile drilling rig in the Gulf of Mexico, beginning on April 20, 2010. (Compl. ¶ 2). The Complaint alleges that the named Plaintiffs own or manage rental properties in Gulf Shores, Alabama. (Compl. ¶¶ 5,6.) The Complaint alleges damage to Plaintiffs' "real and personal property, their earning capacity, business income, and/or use of natural resources." (Compl. ¶ 15.)

The Complaint alleges that BP Defendants operated the Deepwater Horizon in the Gulf. (Compl. ¶ 8.)

Plaintiffs allege that "Cameron manufactured and/or supplied the Deepwater Horizon's blow-out preventers (BOPs)" and that "the BOPs were defective because they failed to operate as intended." (Compl. ¶ 9.)

The Complaint alleges in the most conclusory of terms that "Defendants" were negligent, wanton or willful. (Compl. ¶¶ 12-14.)

The Complaint asserts a purported cause of action for negligence and wantonness. (Compl. ¶¶ 26-34.) The Complaint purports to allege negligence in certain "particulars." (Compl. ¶ 30.) Not one of those particulars alleges any conduct concerning the manufacture or supply of BOPs. To the contrary, the Complaint alleges negligence and fault for the "use of defective BOPs that were improperly installed, maintain, and/or operated." (Compl. ¶ 30.q.)

Conspicuously absent is any allegation that Cameron did anything other than make and sell equipment. The Complaint contains no specific factual allegation that Cameron was involved at all in the operation or maintenance of the Deepwater Horizon or in the institution of safety measures deployed by BP and Transocean for the rig.

## ARGUMENT

OPA's comprehensive and exclusive claims payment system precludes Plaintiffs' purported case against Cameron for the damages sought in the Complaint. Under applicable pleading standards, moreover, the Complaint's allegations fail to state a claim upon which relief can be granted against Cameron.

### I. The Complaint Should Be Dismissed Without Prejudice Because Plaintiffs' Claims Are Encompassed by the Comprehensive and Exclusive Claims Payment System of the Oil Pollution Act of 1990

OPA establishes a comprehensive federal remedial scheme for the recovery of all damages of the types claimed by Plaintiffs in the Complaint, providing an exclusive statutory procedure designed to provide full and complete recovery for all actual economic harm from designated "responsible parties." This statutory remedial scheme is

3

exclusive; it precludes claimants from asserting rights to recover from other parties the specified categories of damages, particularly including the types of damages alleged in the Complaint. *See Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741 (E.D. La. 2009). Because Cameron is not a responsible party under OPA, Plaintiffs' claims against Cameron are precluded. Accordingly, those claims should be dismissed without prejudice.

Importantly, dismissal of Plaintiffs' purported claims against Cameron without prejudice will not impair Plaintiffs' ability to recover for all actual economic harm. Full compensation remains available to Plaintiffs under the strict liability and payment provisions of OPA itself.

### A. The Comprehensive and Exclusive Liability Scheme Enacted in OPA

The OPA system for oil spill liability and payment of claims is explicitly exclusive. OPA mandates that, "[*n*]*otwithstanding any other provision or rule of law*, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged" is strictly "liable" to pay specified "damages." 33 U.S.C. § 2702(a) (emphasis added). This was not a slip of the Congressional pen. The legislative history makes clear that Congress consciously designed an exclusive liability and payment system. "It is important to note that following enactment, liability and *compensation for oil pollution* removal costs and *damages* caused by a discharge from a vessel or facility (as defined in this [bill]) *will be determined in accordance with this [legislation]*." H.R. CONF. REP. NO. 101-653, 1990 U.S. CODE CONG. & ADM. NEWS ("1990 U.S.C.C.A.N.") 779, 802 ("CONF. REP."), repeating the language of S. REP. NO. 101-94, 1990 U.S.C.C.A.N. 722, 746-47 ("S. REP.") (emphasis added). OPA was meant

4

"to create *a single Federal law providing* cleanup authority, penalties, and *liability for oil pollution.*" S. REP., 1990 U.S.C.C.A.N. at 730 (emphasis added).

Under OPA, the President is given the authority to designate the statutory "responsible party" strictly liable for removal costs and specified damages under the Act. 33 U.S.C. § 2714(a). In this case it beyond dispute that the designated responsible parties are a BP entity defendant (lessee/operator of the offshore facility) and a Transocean entity (owner of the vessel). *See* 33 U.S.C. § 2701(32) (owners of vessels and lessees operating offshore facilities).

This strict liability of the designated responsible parties imposed by OPA explicitly extends to, *inter alia*, all damages for "injury to, or economic losses resulting from the destruction of real or personal property," and "loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2) (subsections (B) and (E) respectively). The responsible parties' strict liability thus encompasses all damages claimed by Plaintiffs in the Complaint.

In this context, the statute sets forth a *mandatory* procedure by which a damaged party is to invoke a responsible party's strict liability. OPA explicitly states that *"all claims for removal costs or damages shall be presented first to the responsible party."* 33 U.S.C. § 2713(a) (emphasis added). Only if the responsible party denies the claim or fails to settle it within 90 days may the claimant then sue "the responsible party or guarantor." 33 U.S.C. § 2713(c)(2). Alternatively, under subsection 2713(c), the claimant may "present the claim to" the Oil Spill Liability Trust Fund ("the Fund")

5

established by 26 U.S.C. § 9509. In that event, the Fund is required to pay any valid claim not paid by the responsible party. 33 U.S.C. § 2713(d).

The remaining remedial provisions of OPA plainly depend on the proper invocation of this claims presentment process channeling liability to designated responsible parties. Any party incurring liability under OPA "may bring a civil action for contribution" in specified circumstances. 33 U.S.C. § 2709. Such a contribution action may be brought within three years of (1) a judgment imposing liability under OPA or (2) entry of a judicially approved settlement with respect to costs or damages encompassed by OPA. 33 U.S.C. § 2717(f)(3)(A) and (B). Furthermore, when a responsible party or the Fund pays a claim, the paying entity "shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715(a). And the statute specifically addresses litigation of the subrogated claimants' rights, permitting commencement of such a subrogation claim by the paying party within three years of "the date of payment of such claim." 33 U.S.C. § 2717(f)(4).

By means of its strict liability structure and payment system, therefore, OPA expressly channels the rights of claimants into subrogation litigation to be brought (if at all) by the paying responsible party or the Fund after payment under OPA or litigation to judgment under OPA. Once again, this approach was not inadvertent. Congress plainly understood that these provisions of OPA would dispense with traditional litigation over a claimant's rights or claims against other parties. The pertinent Senate Report expressly noted that "***litigation*** or lengthy adjudicatory proceedings ***over liability***, defenses, ***or the propriety of claims should be reserved for subrogation actions*** against dischargers." S. REP., 1990 U.S.C.C.A.N. at 732. It is clear that Congress consciously designed an

6

efficient remedial system, centralizing difficult litigation in a few contribution or subrogation lawsuits – thereby avoiding potentially thousands of individual suits by claimants against third parties.

In conclusion, OPA establishes a streamlined procedure under which claimants present their claims and then recover from the responsible parties or the Fund without having to prove fault. Any disputes over any ultimate liability of other parties are confined to litigation between those who paid the claims, *i.e.*, the responsible parties and/or the Fund, and any third parties who may be liable under traditional legal principles. There is no need or reason for claimants, such as Plaintiffs here, to sue third parties directly, and OPA does not allow it. Indeed, permitting such suits would subvert the statutory scheme and introduce unnecessary layers of complex litigation that Congress deliberately sought to avoid.

### B. The OPA Remedies Foreclose Claims Against Those Who Are Not Responsible Parties

The comprehensive and exclusive OPA remedies preclude any claim against any defendant that is not a responsible party designated pursuant to OPA. That is the precise holding in the *Gabarick* case cited above.

In that case, the defendants argued that OPA pre-empted all claims for damages encompassed by OPA section 2702(b). The plaintiffs argued against statutory preemption, in part relying upon a savings clause in OPA which provides that "[e]xcept as otherwise provided in this Act, this Act does not affect (1) admiralty and maritime law . . ." 33 U.S.C. § 2751(e). But as Judge Lemelle explained in rejecting that argument, this clause simply means, as its literal language indicates, that the OPA "does not affect admiralty and maritime law *except as provided in the Act.*" *Gabarick*, 623 F.Supp.2d at

7

746 (emphasis added). Because the Act does in fact impose strict liability for specific types of damages, require presentment of claims for those damages, and prescribe who can be sued and when, it necessarily affects admiralty and maritime law in those respects; "the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." *Id.*

The conclusion in *Gabarick* was solidly grounded in Supreme Court precedent interpreting the preclusive effect of other similarly comprehensive statutory remedial schemes. When Congress enacts a comprehensive remedial statute such as the OPA, the new federal remedies replace pre-existing common law or maritime causes of action; "the underlying legal basis" for such causes of action are "pre-empted by [the new federal] statute." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 22 (1981). As Judge Lemelle further explained in *Gabarick*,

> When considering an issue similar to the one *sub judice*, the Supreme Court recognized the preemption of Federal Common Law and General Maritime Law by Congress's comprehensive legislation in the area of water pollution. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981). In finding that the Federal Water Pollution Control Act preempted federal common law of nuisance in the area of ocean pollution, the Court stated, "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate. *Id.* at 15. . . . . OPA explicitly states the damages to which it applies and the remedy to be pursued. The courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law . . . .

623 F.Supp.2d at 747. *See also, e.g., Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981) (Congress "occupied the field" by enacting the Clean Water Act).

As recognized in *Gabarick*, congressional intent furnishes "the ultimate touchstone in every pre-emption case." 623 F. Supp. 2d at 750 (quoting *Altria Group,*

8

*Inc. v. Good*, 129 S.Ct. 538, 543 (2008)). Here, the intent of Congress, "articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation." *Gabarick*, 623 F.Supp.2d at 750. Legislation that, as the Senate Report makes clear, was expressly intended to "create a ***single Federal law providing*** cleanup authority, penalties, and ***liability for oil pollution***." Accordingly, Judge Lemelle in *Gabarick* held that "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA ***only against the responsible party and in accordance with the procedures established by OPA***." 623 F.Supp.2d at 750 (emphasis added). As asserted against a defendant *not* designated a responsible party, therefore, Judge Lemelle dismissed "all claims covered under 33 U.S.C. § 2702." 623 F.Supp.2d at 751. In recognition of the statutory mechanism converting the claimants' rights and claims into potential subrogation and contribution claims to be asserted by the responsible parties, the dismissal was entered without prejudice. *Id.*

### C. OPA Precludes Plaintiffs' Claims Against Cameron

It is beyond dispute that Plaintiffs did not satisfy the statutory requirement of presentment prior to filing suit. The Complaint was filed within 1 month after the *Deepwater Horizon* casualty itself, not 90 days after proper presentment of Plaintiffs' claims. Once Plaintiffs have satisfied that presentment requirement, Plaintiffs, like other claimants, may invoke the statute's remedial provisions and will need only to demonstrate actual economic loss in order to recover from BP or Transocean. Alternatively, they can seek payment from the Fund.

9

Plaintiffs allege that they have suffered damages, not that they have incurred liability under OPA or paid claims for which they might be entitled to be reimbursed under OPA. They therefore have asserted no claim for contribution under 33 U.S.C. § 2709, or for a subrogated claim under 33 U.S.C. § 2715(a).

Instead, the damage claims for injury to property and economic loss asserted by Plaintiffs are all encompassed by the damage categories specified in 33 U.S.C. § 2702(b). The necessary conclusion in this case, therefore, is the same as in *Gabarick*: "In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA ***only against the responsible party and in accordance with the procedures established by OPA***." In short, Plaintiffs remain free to pursue their statutory remedy against the responsible parties under the OPA, so long as they comply with the mandatory claims presentment procedure. But their Complaint against Cameron should be dismissed (without prejudice to the potential rights of the responsible parties) because their damage claims against Cameron are not permitted by OPA.

## II. The Complaint Should Be Dismissed With Prejudice for Failure to State a Claim.

The Supreme Court has definitively established the pleading standards for a complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). Under Rule 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.*, quoting *Twombley*,

550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949, quoting *Twombley*, 550 U.S. at 557.

There is no need to go further into the Supreme Court's analysis. The Complaint in this case fails the *Twombley/Iqbal* standard at the most fundamental level. The Complaint truly offers nothing more than "labels" and "conclusions." The Complaint contains nothing more than "unadorned, the-defendants-unlawfully-harmed me accusations" and "formulaic recitations" of causes of action against Defendants collectively. It does not offer any reason why Cameron might be liable for manufacturing or selling BOPs. Under *Twombley* and *Iqbal*, the Complaint simply "will not do." Because the Complaint tenders the most naked of assertions without any meaningful factual allegation concerning any responsibility of Cameron, it does *not* "suffice" under Rule 8. The Court should not hesitate to dismiss Cameron as a defendant in this action on the ground that the Complaint fails to state a claim upon which relief can be granted against Cameron.

Respectfully submitted,

| | |
|---|---|
| David J. Beck (*Pro Hac Vice*) | Randal H. Sellers (SELLR3398) |
| BECK, REDDEN & SECREST, L.L.P. | M. Warren Butler (BUTLM3190) |
| One Houston Center | Bryan G. Hale (HALEB6964) |
| 1221 McKinney Street, Suite 4500 | STARNES DAVIS FLORIE LLP |
| Houston, Texas 77010 | 100 Brookwood Place, 7th Floor |
| Telephone: (713) 951-3700 | Birmingham, Alabama 35209 |
| Facsimile: (713) 951-3720 | Telephone: (205) 868-6000 |
| dbeck@brsfirm.com | Facsimile: (205) 868-6099 |
| | rhs@starneslaw.com |
| | mwb@starneslaw.com |
| | bgh@starneslaw.com |

*/s/ A. Danner Frazer, Jr.*
A. Danner Frazer, Jr. (FRAZA9809)
Ross A. Frazer (FRAZR7422)
Robert J. Mullican (MULLR1788)
FRAZER, GREENE, UPCHURCH
& BAKER, L.L.C.
107 Saint Francis Street, Suite 2206
Mobile, Alabama 36602
Telephone: (251) 431-6020
Facsimile: (251) 431-6030
adf@frazergreene.com
raf@frazergreene.com
rjm@frazergreene.com
*Attorneys for Cameron International Corporation*

# **CERTIFICATE OF SERVICE**

I hereby certify that I have on July 26, 2010 July 26, 2010electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System which will automatically serve the same via electronic mail or by placing same in the United States mail, properly addressed, first class postage prepaid to the following:

Anna Brantly Fry, Esquire
Christopher D. Boutwell, Esquire
David B. Byrne, III, Esquire
Jere L. Beasley, Esquire
John Everett Tomlinson, Esquire
Joseph Parker Miller, Esquire
Rhon E. Jones, Esquire
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160

*Attorneys for Plaintiff*

William H. Brooks, Esquire
Marchello Dewaun Gray, Esquire
John M. Johnson, Esquire
Adam K. Peck, Esquire
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
400 North 20th Street
Birmingham, Alabama 35203

James Andrew Langan, Esquire
John T. Hickey, Esquire
Richard C. Godfrey, Esquire
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, Illinois 60654

*Attorneys for BP Products North America, Inc.and BP America, Inc.*

Donald E. Godwin, Esquire
Bruce W. Bowman, Jr., Esquire
Floyd R. Hartley, Jr., Esquire
Gavin Eugene Hill, Esquire
Jenny L. Martinez, Esquire
1201 Elm Street, Suite 1700
Dallas, Texas 75270

John N. Leach, Jr., Esquire
Joseph H. Babington, Esquire
Russell C. Buffkin, Esquire
HELMSING, LEACH, HERLONG, NEWMAN & ROUSE. P.C.
Post Office Box 2767
Mobile, Alabama 36652

Robert Alan York, Esquire
1331 Lamar, Suite 1665
4 Houston Center
Houston, Texas 77010

*Attorneys for Halliburton Energy Services, Inc.*

                                              *s/ A. Danner Frazer, Jr.*
                                              Of Counsel