**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DISTRICT**

| | | |
|---|---|---|
| **SUNRISE RENTALS ENTERPRISES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CASE NO. 1:10-CV-00261-WS-M** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BP, plc; et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

**PLAINTIFFS' RESPONSE AND MEMORANDUM IN OPPOSITION TO**
**DEFENDNATS' MOTIONS TO DISMISS**

Plaintiffs, Sunrise Rentals Enterprises and Relax on the Beach, Inc., individually and as class representatives ("Plaintiffs"), submit their Response Brief in opposition to Defendants' BP, plc., BP Products North America, Inc., and BP America, Inc., ("BP"), (collectively "Defendants") Rule 12(b)(1) and 12(b)(6) Motions to Dismiss.  In further support, the Plaintiffs state as follows:

**I.    INTRODUCTION**

Plaintiffs are an owner and operator of rental property and a real estate management company, individually and as class representatives, seeking damages from Defendants as a result of the Deepwater Horizon oil spill.  The above-mentioned Defendants have filed motions to dismiss the Plaintiffs' claims for damages.  Specifically, Defendants allege the Plaintiffs' claims are preempted by the alleged exclusive remedy for oil spills, the Oil Pollution Act of 1990 ("OPA"); that the Plaintiffs have failed to meet the presentment requirements of the OPA; and

1

that the Plaintiffs' claims are barred pursuant to the economic loss doctrine.

The Defendants' Motions are due to be denied.  First, the Plaintiffs' have standing to bring their claims pursuant to the laws of the State of Alabama, general maritime law and the OPA. Moreover, the OPA specifically contains a broad savings clause for the Plaintiffs' federal and state law claims and remedies, including punitive damages.  Moreover, the Plaintiffs have not yet incorporated an OPA claim in their complaint and are not required to satisfy the OPA's presentment requirements as to general maritime and state law remedies or "non-responsible" parties. Second, the Defendants' motions are premature as they amount to merits-based inquiries improper for adjudication at this time.  Third, the economic loss rule is not applicable to the Plaintiffs' claims and whether the rule is applicable is a fact based inquiry.

## II.     QUESTIONS PRESENTED

The questions to be addressed in the present case are as follows: (A) Is the OPA the exclusive remedy for oil spills, thereby preempting all maritime and state law claims and remedies for oil pollution damages?; (B) Are the Defendants' arguments purely merits based given the substance and context of their arguments?; and (C) Does the economic loss rule bar recovery to Plaintiffs' claims in this specific type of case?

## III.    STANDARD OF REVIEW

In analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, "the complaint is construed in the light most favorable to the plaintiff, and all well-pleaded facts alleged by the plaintiff are accepted as true."  *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1220 (11th Cir. 2002)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A motion to dismiss "should be denied unless it appears *beyond doubt that the Plaintiff can prove no set of facts in support of its claims.*" *Jackam v. Hospital Corp. of America Mideast,*

*Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)(emphasis in original)(internal citations omitted). Therefore, "the movant sustains a very high burden." *Id*. (internal citations omitted).

In deciding on a Rule 12(b)(1) motion to dismiss the Court must distinguish between *facial* attacks and *factual* attacks. *Gottfried v. Germain (In re CP Ships Ltd. Sec. Litig.)*, 578 F.3d 1306, 1308 (11th Cir. Fla. 2009)  "A 'facial attack' on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id* (citing *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotations and alterations omitted)). "'Factual attacks," on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as and affidavits are considered." *Id*. In a factual challenge, "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Id* (citing *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)).

## IV.   ARGUMENT

### A.   THE PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS FOR DAMAGES UNDER STATE LAW, MARITIME LAW AND THE OIL POLLUTION ACT OF 1990.

The Defendants argue that the OPA preempts all state law and maritime law remedies, and as such, any state law and maritime law remedies claimed by Plaintiffs should be dismissed. As stated in detail below, Defendants' argument is far from determined and assumes detailed and complicated factual questions that are non-existent without merits based discovery.  For these reasons alone, the Defendants' arguments should be denied.  Moreover, the Defendants ignore the savings clause of the Oil Pollution Act, which specifically permits the Plaintiffs to allege

3

additional, supplementary claims.  In addition, the Defendants assume what is not included in the OPA statute should be summarily prohibited.

      **1.  The Plaintiffs' claims are governed by state law, general maritime law and the Oil Pollution Act of 1990.**

The Plaintiffs have standing to bring claims before this Court pursuant to general maritime law, state law and the Oil Pollution Act of 1990 ("OPA"), and as such, they retain their right to plead their claims in the alternative.

In deciding whether a negligence suit is within admiralty jurisdiction, the Eleventh Circuit has stated: "Determination of the question whether a tort is 'maritime' and thus within the admiralty jurisdiction of the federal courts has traditionally depended upon the locality of the wrong.  If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, it is not." See *Miller v. United States*, 725 F.2d 1311, 1313 (11th Cir. 1984).

The Deepwater Horizon, a semi-submersible drilling rig, may be a vessel for purposes of admiralty jurisdiction. See *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 497 (2005) (citing 1 U.S.C. § 3, which defines a "vessel" to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation in water").   Explosions aboard a vessel in navigable water resulting in potential disruption of maritime commerce squarely meet the requirements of maritime jurisdiction. See *Grubart, Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527 (1995).  "With maritime jurisdiction comes the application of substantive admiralty law."  See *East River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 864 (1986).

The Defendants erroneously argue that Plaintiffs cannot maintain a state law action simply based on the application of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C.

§1349(b)(1)(A). However, the Defendants' assumption that state law could only apply through the OCSLA is ill conceived. In *Brockington v. Certified Electric, Inc*., 903 F. 2d 1523 (11th Cir. 1990), the Court stated that  "…federal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law." *Id.* at 1530.   As a result Courts have oftentimes recognized the "maritime but local" doctrine, which allows a judge in a maritime case to supplement maritime law with substantive state law. *See Askew v. American Waterways Operators, Inc.*, 93 S. Ct. 1590 (1973); *Bouchard Trans. Co. v. Updegraff,* 147 F. 3d 1344 (11th Cir. 1998).

In addition, to the extent that Plaintiffs' injuries and damages occurred or were consummated on land due to the activities of a vessel on navigable waters, state common law applicable to the local of the damage would provide a remedy.  *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996) (unanimous decision upholding application of local substantive law in a federal admiralty court).   In fact, prior to passage of the Admiralty Extension Act of 1948, the only remedy available for damages done on land due to vessels on navigable waters was pursuant to state common law. See *The Admiral Peoples*, 295 U.S. 649,651 (1935) and *Cleveland Terminal and Valley R.R. Co. v. Cleveland Steamship Co.*, 208 U.S. 316 (1908). In passing the Admiralty Extension Act, Congress did not create a new cause of action, but made admiralty law a concurrent remedy with existing common law remedies to actions brought under the Act (46 U.S.C. 540). See *Shell Oil Co. v. The Tynemouth*, 205 F. Supp. 838 (E.D. La 1962) (vacated on other grounds); *Vega v. U.S.*, 86 F. Supp. 293 (SDNY 1949), aff'd 191 F. 2d 921 (2d Cir. 1951), cert. denied 343 U.S. 909 (1952).

Assuming the OCSLA is the only way state law could apply to this case - which it is not - the application of state law to the common law claims could arise from the provisions of the

OCSLA. The OPA does not preempt or displace the OCSLA. Defendants have not cited any statute or court decision which says it does. Considering the amount of merits based discovery necessary to determine whether OCSLA applies, it is too early at this stage in the case to decide on a motion to dismiss.

Obviously, the OPA will also apply to Plaintiffs' claims arising from the oil spill. The OPA was created to establish responsibility via federal statute for clean-up of oil discharges and certain damages caused by those discharges. OPA sets out liability for a designated "responsible party" as strict liability. "Notwithstanding any other provisions or rule of law, and subject to the provisions of this Act, each responsible party … is liable for the removal costs and damages specified in section (b) of this section that result from such incident." See 33 U.S.C. § 2702(a). For purposes relevant to this brief, OPA provides the following "damages" recoverable by affected parties: real or personal property, See 33 U.S. C. § 2702(b)(2)(B), subsistence use of natural resources, See 33 U.S.C. § 2702(b)(2)(C), and profits and earning capacity. See 33 U.S.C. § 2702(b)(2)(E). For these reasons, the Plaintiffs have standing to assert their claims under state law, maritime law and the OPA.

>    **2.  The OPA preserves state and maritime law remedies as part of its savings clause.**

In support of their motions to dismiss, the Defendants completely overstate the preemptive breadth of the OPA as the exclusive remedy for oil spills. There is no language in the OPA specifically preempting state or maritime law and, in fact, the OPA contains two savings provisions preserving the appicability of traditional common law and maritime remedies:

>    (e) Admiralty and Maritime Law – Except as otherwise provided in this Act, this Act does not affect -
>    (1) admiralty and maritime law; or
>    (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction,

> saving to suitors in all cases all other remedies to which they are
> otherwise entitled.  See 33 U.S.C. § 2751(e)(1)-(2).

In addition, the jurisdiction section of the OPA indicates a savings of state court remedies, with a

choice of state or OPA law:

> (c) STATE COURT JURISDICTION – A State trial court
> of competent jurisdiction over claims for removal costs or
> damages, as defined under this Act, **may consider claims under
> this Act _or_ State law** and any final judgment of such court (when
> no longer subject to ordinary forms of review) shall be recognized,
> valid, and enforceable for all purposes of this Act.  See *Id.* at §
> 2717(c).

At §2717(a) – (c) of the OPA, entitled "RELATIONSHIP TO OTHER LAW", the OPA provides

an indication of saving state law and maritime claims:

> (a)  PRESERVTION OF STATE AUTHORITIES … - Nothing in this Act
> or the Act of March 3, 1851 shall -
> > (1) affect, or be construed or interpreted as preempting, the
> > authority of any State or political subdivision thereof from
> > imposing any additional liability or requirements with respect to –
> > > (A) the discharge of oil or other pollution by oil within
> > > such State; or
> > (2) affect, or be construed or interpreted to affect or modify in any
> > way the obligations or liabilities of any person under … State law,
> > including common law.
> …
> (c)  ADDITIONAL REQUIREMENTS AND LIABILITIES;
> PENALITIES. – Nothing in this Act … shall in any way affect, or be
> construed to affect, the authority of the United States or any State or
> political subdivision thereof –
> > (1) to impose additional liability or additional requirements;

Considering how the OPA is liberally constructed to benefit victims of oil pollution and

punish its perpetrators, it is no surprise that courts have determined that OPA does not preempt

state or federal law.  See *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st

Cir. 2000).  Specifically, courts have held that OPA's breadth does not preempt state law

remedies.  See *Tanguis v. Westchester*, 153 F.Supp.2d 859, 863 (E.D. La. 2001) (holding that the

7

OPA does not preempt state law in the area of oil spill liability and compensation); *Isla Corp. v. Sundown Energy LP*, 2007 WL 1240212 (E.D. La. 2007)(same); *U.S. v. Bodenger*, 2003 WL 22228517 (E.D. La. 2003)(same); *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630-31 (1st Cir. 1994) (using OPA to support validity of state liability statute permitting recovery of purely economic loss). The United States Supreme Court, in dictum, expressed that given the OPA's savings clause, the statute was not intended to preempt state laws. See *U.S. v. Locke*, 529 U.S. 89, 105-106 (2000).   Following suit, Courts have also recognized that the OPA was not designed to preempt federal law remedies. See *U.S. v. Egan Marine Corp.*, 2009 WL 855964 (N.D. Ill. 2009) (US may pursue claims under both OPA and River and Harbors Act); *United States v. M/V Cosco Busan*, 557 F.Supp.2d 1058, 1063 (N.D. Cal. 2008) (US may pursue claims based on other federal statutes in addition to OPA claims even when seeking to recover the same damages); *National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F.Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (claimant may pursue general maritime law claims to the extent it seeks damages not covered by the OPA).

Alternatively, Article III, clause 2 of the Constitution creates the basis for admiralty and maritime law of the United States.  Because the federal courts are constitutionally afforded jurisdiction over maritime law, there is an extremely high bar for Congress to change or preempt long-standing judge created general maritime law. Indeed, the Second Circuit in *U.S. v. Oswego Barge Corp.,* 664 F.2d 327 (2nd Cir. 1981), reviewed Supreme Court decisions and gleaned four factors to be considered when analyzing statutory preemption of general maritime law claims. Those factors include (1) legislative history; (2) the scope of the legislation; (3) whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and (4) likeliness of Congress's intent to preempt "long established and familiar principles of the

common law or the general maritime law."  See *Id.* at 344.  Applying these factors to the OPA statute:

- Legislative History:  H.R. Conf. Repp. 101-653 (1990) states that the OPA savings provision "is intended to clarify that the House bill does not supersede [Art. III, clause 2 of the Constitution], nor does it change the jurisdiction of the District Courts …."  Another legislative reference states, "It is not the intent of the Congress to change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States." See 1990 U.S.C.C.A.N. 779, 839).
- Legislative Scope:  The OPA defines its scope explicitly through its statutory text.  It defines what damages are covered in the Act, and the process for pursing the claim, while still being flexible in terms of supplementing rather than supplanting alternative claims and remedies.
- Whether judge made law would fill a gap left by Congress's silence:  Applying judge-made general maritime law (if it is determined maritime law applies in this case) allows the Plaintiffs to pursue claims that are not covered under the OPA.  For example, the OPA is silent as to the potential extreme conduct of the Defendants, whereas state and maritime law specifically provide remedies to compensate Plaintiffs and punish perpetrators for intentional, willful, wantonness or grossly negligent conduct (i.e., punitive damages).
- Likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law":  The statutory language of OPA does not contain an explicit preemption clause or otherwise expressly preempt the general maritime law.  When taken in context with OPA's strong savings clauses and silence on state and maritime law, the statute's face is not indicative of an intent to preempt those traditional remedies – only to supplement them. See Senate Report No. 101-94.

For these reasons, the Defendants' statutory preemption arguments are due to be denied.

The Defendants argue that the Plaintiffs' case should be dismissed based on other, inapplicable cases.  Not one of the cases cited by Defendants involved only state law or maritime remedies on their own – as the Plaintiffs have pled in this case. Namely, there are very few instructive cases that speak to the application of the OPA, and its intertwining nature with state and federal laws.  It would also be safe to assume that no case on record involves the sheer breadth, devastation, factual and financial impacts as this particular case does. Nor is there a case that is instructive as to what Plaintiffs are to do when the responsible parties' claims procedure

proves to be completely inadequate, deliberately confusing and oppressive, as the Plaintiffs believe is occurring with the current oil spill.

While it has been held, albeit in completely different factual circumstances in foreign jurisdictions, that the OPA provides the exclusive federal remedy *for those damages recoverable under OPA* caused by oil spills, thereby limiting the application of general maritime law, **no court** has held that OPA preempts state common law claims or state law claims for damages not recoverable under OPA. The Defendants rely on *South Port Marine, LLC v. Gulf Oil Ltd. Partnership* See 234 F.3d 58 (1ˢᵗ Cir. 2000) and *Gabarick v. Laurin Maritime (America) Inc;* 623 F. Supp. 2d. 741 (E.D. La. 2009).  Neither case holds that OPA preempts common law tort claims generally or that the OPA preempts state common law claims for damages not recoverable in an action under the OPA. In *South Port Marine*, plaintiff's common law state claims were dismissed due to the application of that state's oil pollution compensation statute, **not** as a result of application of the federal OPA. The *South Port Marine* Court noted that, had the common law tort claims not been dismissed due to application of state statutory law, some of the tort claims may have been adequate to support an award of punitive damages under state common law even though it was determined that punitive damages were not recoverable under the federal OPA. In *Gabarick*, the court held that general maritime law is only preempted by the OPA to the extent that the damages claimed under the common law claims are recoverable under the federal OPA. Moreover, the *South Port Marine* Court observed that "we have indeed acknowledged that Congress did not intend the OPA to bar the imposition of additional liability by the States." *South Port Marine*, 234 F.3d at 65.

These courts, as well as Defendants here, do not address the recent decisions in *Baker v. Exxon Shipping*, 128 S.Ct 2605 (2008), wherein the Supreme Court refused to find that The

Clean Water Act preempted common law claims for compensatory and punitive damages for economic losses when the statute is silent on the issue and when specifically protecting water and natural resources.  The holding in *Baker* strongly supports that, as with the The Clean Water Act, the OPA does not preempt common law remedies.

Reading these cases together with a plain reading of the Act itself indicates that the Plaintiffs' claims are not preempted.  Moreover, given the breadth and circumstances surrounding this case, it is questionable whether the cases cited by the Defendants will be instructional at all in this jurisdiction or other jurisdictions that are incurring continuing and widespread damages from the oil spill.

> **3.  Because the OPA is not an exclusive remedy and Plaintiffs did not allege an OPA count in their Complaint at this time, Plaintiffs are not required to satisfy the OPA presentment process and this Court does have jurisdiction.**

The Defendants incorrectly contend that since the Plaintiffs' claims involve damages caused by the Deepwater Horizon oil spill, the Plaintiffs had to satisfy the OPA presentment process before first bringing suit against them.  This argument is fundamentally flawed.  First, the Plaintiffs did not incorporate an OPA count in their complaint, thus, they do not have to satisfy the presentment requirements of OPA before filing suit pursuant to state and maritime law claims. Consequently, whether or not Plaintiffs have previously presented an OPA claim is irrelevant and so are the Defendants' attacks in their motions on this Court's subject matter jurisdiction in this matter.  Second, nowhere in the OPA statute are the Plaintiffs required to satisfy presentment prior to bringing traditional state and maritime law claims.  Again, the Defendants are impermissibly overstating the breadth and reach of the OPA into traditional state and maritime law remedies. To the extent maritime law is found to apply to the Plaintiffs' claims, the Court has jurisdiction in admiralty.

Assuming, *arguendo*, that no federal question jurisdiction exist in this case (which it does) this Court still has subject matter jurisdiction based upon diversity jurisdiction as clearly set out in the Plaintiffs' Complaint.  Thus, Defendants 12(b)(1) Motion is due to be denied.

      **4. The current OPA claim presentation process is wholly inadequate to facilitate payment of claims to those damaged under the present circumstances.**

In their motions to dismiss, the Defendants argue that the Plaintiffs have failed to satisfy the OPA presentment requirements, and in turn, cannot proceed with a valid OPA claim. However, a closer look at the OPA's presentment requirements, taken into account with the claims process orchestrated by BP and the thousands of affected claimants, demonstrates why the Plaintiffs have not included an OPA count in their lawsuit at this time.

This case is unprecedented.  Upon information and belief, thousands of claimants have sought redress through the OPA notice of claim process and BP's claim centers, all to find out their claims are either lost, delayed, unpaid and near impossible to explain. This is no surprise as the governing body of the claims OPA presentment process remains BP, the designated responsible party. In addition, the rigid presentment framework of the Oil Pollution Act was never intended to manage hundreds of thousands of claims.  Indeed, the BP claims process has evolved into a presentment nightmare. Upon information and belief, Claimants' calls rarely reach a claim center provider, call center employees are restricted from sending or receiving email or written communications, and the claimants themselves are relegated to an oral framework presentment and negotiation of claims.

Consequently, the BP claims process is built to circumvent the denial requirement in OPA's presentment process. Specifically, the OPA requires a claimant's claim be affirmatively denied before the claimant can proceed with litigation.  By simply administering a partial

payment, or refusing to specifically deny an "emergency claim", the claims process can be administered to place strict liability OPA claims in claim center purgatory without hope of ever meeting the OPA's presentment requirements. As the OPA statute is worded, because claimants never made a sum certain claim on an emergency claim (although BP stated early in the process that claimants need only make a minimal showing for emergency claims), they would not be able to proceed with litigation should BP deny their claims.  Presumably, to proceed with litigation, the claimant would have to restart the three month window and wait for a denial of a sum certain amount – assuming the claimant could even present a sum certain amount on continuous damage, such as the nature of damage in this case.

More troubling is the difficulty to obtain an affirmative denial based on the practical implementation of the claim centers.  Instead, the presentment process requirements foster refuge behind a rigid sum certain requirement, and a partial payment practice that in theory does not amount to an affirmative denial.  Reading the statute strictly, either one of these instances could bar an OPA claim from ever reaching the courthouse steps. BP itself has admitted it has never denied claims, while at the same time, federal government estimates only 12% of claims had actually been paid nearly two months after the oil leak and mass fishing closures. United States House of Representatives, Committee on the Judiciary, "BP Claims Process Still Falls Short", June 18, 2010.  http://judiciary.house.gov/news/100618.html Last checked on July 01, 2010. (Michigan Democratic Rep. John Conyers, Jr., stated:  "I remain concerned that BP is stiffing too many victims and short-changing others…") The presentment process lends itself to possible abuse and constant denial and re-submission of claims.  A responsible party can rely on the three month process to deny thousands of claims, of which would not be able to proceed in court otherwise based on the OPA's strict presentment requirements.

For these reasons, the Plaintiffs' OPA claim does not exist in their complaint at this time. The extraordinary circumstances of this environmental calamity underscore the necessity for judicial supervision and relaxed treatment of the OPA's presentment requirements, so that claimants may proceed with claims in a neutral court system rather than sit in purgatory with a claims process slanted to protect BP's interests.   Consequently, it is essential for the Plaintiffs' claims to have a neutral alternative to an otherwise BP-dominated claims process.

## B.     THE DEFENDANTS' MOTIONS TO DISMISS ARE PREMATURE.

### 1.  The Defendants' choice of law arguments encompass factual inquiries that are improper for resolution at this stage.

The Defendants' motion is based primarily on the preemptive effect of the OPA over state law and general maritime law.  Beyond the Defendants' improper assessment of the OPA's preemptive breadth, the Defendants cannot even reach this argument until they first conclude which choice of law governs – state, maritime or both. This determination can only be made after a thorough analysis of the specific facts surrounding the operation of the Deepwater Horizon drilling rig.  Considering this litigation remains in the earliest stages and the Defendants have not even filed an answer, there are insufficient facts before the Court to allow this determination to be made and Defendants' motions to dismiss should be denied.

For instance, to determine if the OCSLA and its state law borrowing provisions apply, the Court must determine that three necessarily fact determinate requirements have been met: (1) That the controversy arises on a site covered by the OCSLA; (2) That federal maritime law does not apply of its own force; and (3) The state's law applicable is not inconsistent with federal law. *Grand Isle Shipyard v. Seacor Marine*, 589 F/3d 778,782-3 (5th Cir. 2009)(en banc).  Moreover, the determination of the application of maritime law is a "fact based inquiry." See *Domingue v Ocean Drilling & Exploration Co.*, 923 F. 2d 393, 395 (5th Cir. La. 1991).  Thus, Defendants'

conclusion of the inapplicability of the OCSLA is premature without a merit based factual determination that necessitates the denial of Defendants' motion to dismiss.

Attempting to resolve the second OCSLA element for application of state law (whether maritime law applies of its own force) also evidences why resolution of these issues will require a factual record before being decided. For maritime law to apply of its own force, the machine or equipment involved must first be found to be a "vessel" on a navigable waterway. Again, the Deepwater Horizon may or may not be considered a vessel for purposes of the second element required for application of state law under the OCSLA depending on the facts to be established. It is clear however that discovery could demonstrate the second element's inapplicability, which is further reason why the Defendants' motions to dismiss should be denied.

A factual inquiry is also necessary with respect to consideration of the "connection – to – maritime activity" test used to determine if maritime law is applicable because the maritime commerce requirement must also involve a "vessel". As stated by the Court in *Sohyde Drill & Marine v. Coastal States Gas*, 644 F.2d 1132, 1136 (5th Cir. 1981), the determination of a maritime activity must be considered "in light of the facts of the instant case."

Therefore, without a thorough merits-based inquiry, it is unclear whether maritime law or state law will apply to the present litigation. Surely, Defendants' unsupported, factual assertions do not resolve these issues. The Plaintiffs are entitled to their own investigation through merits-based discovery to determine whether state or maritime law does (or does not) apply. For these reasons, Defendants' motions to dismiss are due to be denied.

### C.   THE DEFENDANTS' ECONOMIC LOSS DOCTRINE ARGUMENTS ARE MISGUIDED

The Defendants' arguments regarding the economic loss doctrine are premature and misguided and therefore must fail.  As stated *supra*, the Plaintiffs need only present any set of

facts in support of their claims which would entitle them to relief to survive the Defendants'
motions to dismiss.  The Plaintiffs have clearly met this threshold.  A factual inquiry is necessary
to determine what law may apply to Plaintiffs' claims and, at this early stage of this case, it is
impossible to determine if the economic loss rule would apply and, if it does, the scope of its
application.  Also, upon an investigation of the merits, it is possible that the state law gap filler
provisions of the OCSLA will apply, and thus Plaintiffs' damages would be foreseeable under
common law negligence.  In that event, a further factual inquiry would be necessary to determine
which state law would apply.

> **1.   The Defendants' conduct is determinative of whether the Plaintiffs' losses
> fall within the economic loss rule, and as such, are subject to a merits
> based inquiry.**

Defendants' conduct is an important, factually determined factor in deciding whether the
economic loss rule applies to a case.  Numerous courts have indicated that the economic loss rule
may not apply where intentional conduct caused the Plaintiffs' damages. See *Conoco, Inc. v.
Halter-Calcasieu, LLC,* 865 So. 2d 813, 822 (La. App. 2003); *Getty Refining & Marketing Co. v.
MT FADI B,* 766 F.2d 829 (Pa. CA 1985) (adopted *Robins Dry Dock* and held that absent
physical damage, there can be no recovery for purely economic harm resulting from
**unintentional** maritime torts); see also *M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985);
Determining the Defendants' conduct is necessarily a merits-based inquiry – and requires a
thorough discovery investigation in order to resolve these issues. Unfortunately, all claimants,
including the Plaintiffs in the present motion, were not privy to the internal decisions and
discussions between BP, Halliburton, Cameron and Transocean regarding the drilling,
cementing, application and analysis of the blow out preventer, or the critical decisions leading to
the Deepwater Horizon explosion.  Moreover, even after the leak occurred, the Plaintiffs do not

have the necessary information to determine which steps the Defendants took, or intentionally did not take, in laying out their remedial measures for protecting coastlines and fishing estuaries from the approaching oil.  All of these documents and discussions would be available to the Plaintiffs in formal discovery – of which the Plaintiffs are entitled to.  Importantly, Plaintiffs have yet to receive an answer from the Defendants to the allegations set forth in Plaintiffs' complaint. As a result, the applicability of the economic loss rule to this case has yet to be determined.

Recent examples from the Exxon Valdez oil spill disaster indicate the Plaintiffs' investigations may show the reckless, wanton and/or intentional conduct of the Defendants.  For example, evidence dating back to the Exxon Valdez disaster demonstrates the intentional lack of preparedness in the oil industry for major spills. Indeed, reports indicated that oil company response was "… unreasonably slow [and] confused," See S. Rep. No. 101-94, at 2 (1989), reprinted at 1990 U.S.C.C.A.N. 722, 723-24. and "was clearly inadequate to contain and recover the spilled oil." See United States General Accounting Office, Adequacy of Preparation and Response to the Exxon Valdez Oil Spill 1 (1989).   The problems identified with the inadequate response "ranged from a shortage of equipment and skilled personnel to inadequate communications and organizational structures." See Id. at 14. Effectively, "[m]ajor problems were encountered because no one had realistically prepared to deal with a spill of that magnitude in the Prince William Sound." See Id. at 1.  Compounding matters was the ineffectiveness of the recovery techniques used to manage the spill. See Id. at 2.

The accounts from the Exxon Valdez disaster are all too ironic – they seem to paint a very close picture to the type of behavior leading up to the Deepwater Horizon spill, and the failures in managing the subsequent leak.   The combined alleged conduct between the

17

Defendants leading up to the Deepwater Horizon explosion suggest the Defendants were engaged in conduct that falls well beyond simple negligence. See http://online.wsj.com/article/SB100014240527487040 26204575266560930780190.html "BP Decisions Set Stage for Disaster" By Ben Casselman and Russel Gold, May 27, 2010. The Wall Street Journal. Last checked on July 01, 2010. All of this information would need to be flushed out in discovery, and the Plaintiffs should have their opportunity to do just that to establish the conduct of all parties.

For these reasons, Plaintiffs are entitled to merits based discovery to determine the specific conduct of the parties; therefore, Defendants' arguments must fail and their motions to dismiss be denied.

### 2. The circumstances of this case require specialized treatment under the economic loss doctrine.

Plaintiffs derive income and their livelihoods by leasing rental property to vacationers who travel to the Alabama Gulf Coast to enjoy the bountiful natural resources of the area, specifically its beaches, waterways, and access to what before this environmental catastrophe were some of the best fishing grounds in the United States. As a result of the Deepwater Horizon oil spill and its devastating effects on these natural resources, the Plaintiffs' rental businesses are devastated. The Defendants cite *Robins Dry Dock* and the subsequent case *M/V Testbank* to suggest that all plaintiffs must have a proprietary interest in the thing damaged to recover economic damages in cases of unintentional tort. See *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 304 (1927); and *State v. M/V Testbank*, 752 F.2d at 1019 (5th Cir. 1985). While the Plaintiffs do not dispute that *Robins Dry Dock* has been applied in maritime cases, the principle "does not bar every single economic loss claim that is unaccompanied by physical damage." See *Seko Energy Inc. v. M/V Margaret Chouest*, 820 F.Supp. 1008, 1011 (E.D. La.

1993).  Indeed, the full extent of the *Robins Dry Dock* rule is not clear in the Eleventh Circuit, except that fishermen and fishing boat owners can sue to recover economic damages without suffering physical damage to their proprietary interest.  *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813, 820 (11th Cir. 1984).

The instant case can be distinguished from *Robins Dry Dock* in that Plaintiffs do not complain that a party in contractual privity with them was injured by the acts of the Defendant, which in turn caused their damages.  Here, Plaintiffs seek recovery for the damages they have directly suffered as a result of Defendants' tortuous conduct.  The fact their direct damages are economic in nature should not forestall Plaintiffs ability to recover for those damages.  See *Herculese Carriers, Inc. v. State of Florida*, 720 F.2d 1201, 1201 (11th Cir. 1983) (Clark, J., concurring), vacated and affirmed by equally divided en banc court, 728 F.2d 1359 (11th Cir. 1984).  Indeed, Plaintiffs have been unable to find any Eleventh Circuit cases which hold that a party, like Plaintiffs, who suffer direct damages resulting from Defendants' tortuous conduct, are barred by the *Robins Dry Dock* rule.  The instant facts create a compelling reason to limit the *Robins Dry Dock* rule to its original boundaries – to cases where unintentional conduct by the defendant causes damage to a party in contractual privity with the plaintiff.

Plaintiffs contend that a determination of whether the *Robins Dry Dock* rule applies in this case should not be done at this early stage of the case.  Such a determination should be made only after the parties have the opportunity to conduct thorough and extensive factual discovery.  Thus, Defendants' motion to dismiss should be denied.

### 3. *Robins Dry Dock* and *Testbank* do not bar Plaintiff claims because they have been statutorily overruled.

Plaintiffs assert that the *Robins Dry Dock/Testbank* rule does not apply to this instant case because it has been statutorily overruled by a 1986 amendment to the "Comprehensive

Environmental Response, Compensation and Liability Act of 1980" ["CERCLA", 42 U.S.C. Section 9601 et seq]. CERCLA, 42 U.SC § 9607(h), which was passed after the *Testbank* decision, states:

> The owner or operator of a vessel shall be liable in accordance with this section, under maritime tort law, and as provided under section 9614 of this title notwithstanding any provision of the Act of March 3, 1851 (46 U.S.C. 183ff) [which is "The Limitation of Liability Act"] or the absence of any physical damage to the property interest of the claimant.

The language of the statute along with the legislative history of this amendment clearly overrule the *Robins Dry Dock* and *Testbank* cases, or, at the very least, is evidence of Congress's intent that third party damages under applicable Federal and State law should allow third party recovery of economic losses even though there is no direct physical damage. See 2A LEGISLATIVE HISTORY OF THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986, at 1180 (Committee on Env't & Public Works ed., 1990) (Sen. Bentsen stated, "It [the amendment] clarifies the congressional intent in that regard, allowing claims for third-party damages under applicable Federal and State law. Additionally, I have clarified that under CERCLA and maritime tort law third parties may recover for economic loss due to release of hazardous substances even though there is no direct physical damage."); *see also* H.R. CONF.REP. 99-962, 99th Cong., 2nd Sess. 1986 U.S.C.C.A.N. 3068, 1985 WL 25940 ("Section 107 of CERCLA is amended to clarify that a vessel owner would be liable in accordance with section 107 under maritime tort law and the physical damage to the proprietary interest of the claimant is not required as a condition of liability.").

Thus, Plaintiffs claims are not barred by *Robins Dry Dock* and *Testbank* and Defendants' Motion to Dismiss is due to be denied.

**4.  Alabama State Law does not recognize the *Robins Dry Dock* rule.**

Defendants' *ipse dixit* pronouncement that should admiralty law not apply of its own force in this case Louisiana state law would necessarily apply as the surrogate federal law under the OCSLA (and bar Plaintiffs recovery due to the economic loss doctrine) is premature.  Under the OCSLA, "To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations . . . the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon."  43 U.S.C. §1333(a)(2)(A).  The determination of which state is the adjacent state is heavily fact-dependent and must be made by a district court considering four types of evidence:  "(1) Geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; (4) projected boundaries."  *Snyder Oil Corp. v. Samedan Oil Corp*, 208 F.3d 521,524 (5th Cir. 2000).  Defendants assert in Footnote 5 of their Memorandum [Doc. 55], that "Louisiana is geographically closer than any other Gulf Coast state;" thus, Louisiana law must apply.  However, geographic proximity is only one of the factors to consider and is not the sole determinative factor.  *Id.* at 525.  In fact, the Court in *Snyder* held that although the drilling platform was six miles closer to Louisiana than to Alabama, Alabama was the adjacent state and thus, Alabama law applied.  *Id*. at 524, note 2.

Plaintiffs contend that a determination of the "adjacent state" is premature at this time. The determination of which state's law would serve as the surrogate federal law under the OCSLA would require a factual analysis that necessitates the denial of the instant motion to dismiss.

In the event that admiralty law does not apply in this case and Alabama is determined to be the "adjacent state," Plaintiffs claims are not barred by the *Robins Dry Dock* rule because

Alabama has not explicitly recognized the *Robins Dry Dock* rule where plaintiffs claim purely economic damage resulting from Defendants' negligent conduct.  Plaintiffs' damages would be foreseeable under the Alabama common law of negligence.

**IV.     CONCLUSION**

For the reasons set forth above: the Oil Pollution Act does NOT preempt Plaintiffs' maritime and state law claims; the Defendants' arguments are purely merits based and premature given the current status of this litigation; and the economic loss rule does NOT bar recovery for Plaintiffs' claims.  Therefore, Defendants' motions to dismiss should be DENIED.

Respectfully submitted by,

s/ Christopher D. Boutwell
Jere L. Beasley (BEASJ1981)
Rhon E. Jones (JONE7747)
John E. Tomlinson (TOMLJ4095)
Christopher D. Boutwell (BOUTC1941)
J. Parker Miller (MILLJ7363)
A. Brantley Fry (FRYA5302)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36104
(334) 269-2343

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of August, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the Court's electronic filing system.

s/ Christopher D Boutwell
OF COUNSEL

23