**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT**

| | |
|---|---|
| **SUNRISE RENTALS ENTERPRISES, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | **CASE NO. 1:10-CV-00261-WS-M** |
| ) | |
| **v.** ) | |
| ) | |
| **BP, plc; et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## PLAINTIFFS' RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs, Sunrise Rentals Enterprises and Relax on the Beach, Inc., individually and as class representatives ("Plaintiffs"), submit their Response Brief in opposition to Defendants' Halliburton Energy Services, Inc. ("HESI") and Cameron International Corporation ("Cameron") Motions to Dismiss (collectively "Defendants") Rule 12(b)(1) and 12(b)(6) Motions to Dismiss and HESI's alternative Rule 12(e) Motion for a More Definite Statement. In further support, the Plaintiffs state as follows:

## I.     INTRODUCTION

Plaintiffs are an owner and operator of rental property and a real estate management company, individually and as class representatives, seeking damages from Defendants as a result of the Deepwater Horizon oil spill. The above-mentioned Defendants have filed motions to dismiss the Plaintiffs' claims for damages. Specifically, Defendants argue that Plaintiffs' claims are preempted by the alleged exclusive remedy for oil spills, the Oil Pollution Act of 1990

1

"OPA"; that the Plaintiffs have failed to meet the presentment requirements of the OPA; that Plaintiffs' claims are barred by the economic loss doctrine; that Plaintiffs cannot recover punitive damages; and that Plaintiffs' Complaint fails to meet the *Twombly* pleading standard. In the alternative, Defendant HESI has filed a Motion for More Definite Statement of Plaintiffs' claims.

The Defendants' Motions are due to be denied.  Plaintiffs have standing to bring their claims pursuant to state law, general maritime law and the OPA. The OPA specifically contains a broad savings clause for Plaintiffs' federal and state law claims and remedies, including punitive damages. Plaintiffs have not yet incorporated an OPA claim in their complaint and are not required to satisfy the OPA's presentment requirements as to state law remedies or "non-responsible" parties. Defendants' motions are premature as they amount to merits-based inquiries improper for adjudication at this time.  Additionally, the economic loss rule is not applicable to Plaintiffs' claims and whether the rule is applicable is a fact based inquiry.  Finally, Plaintiffs have met the *Twombly* pleading standard and no more definite statement is warranted.

## II.    QUESTIONS PRESENTED

The questions to be addressed in the present case are as follows: (A) Is the OPA the exclusive remedy for oil spills, thereby preempting all maritime and state law claims and remedies for oil pollution damages?; (B) Are the Defendants' arguments purely merits based given the substance and context of its arguments?; (C) Does the economic loss rule bar recovery in this specific type of case?; and (D) Have Plaintiffs sufficiently plead their claims?.

## III.   STANDARD OF REVIEW

In analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, "the complaint is construed in the light most favorable to the plaintiff, and all well-pleaded facts alleged by the plaintiff are accepted as true." *McCulloch v. PNC Bank,*

*Inc.*, 298 F.3d 1217, 1220 (11th Cir. 2002)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A motion to dismiss "should be denied unless it appears *beyond doubt that the Plaintiff can prove no set of facts in support of its claims.*" *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)(emphasis in original)(internal citations omitted).  Therefore, "the movant sustains a very high burden." *Id*. (internal citations omitted).

In deciding on a Rule 12(b)(1) motion to dismiss the Court must distinguish between *facial* attacks and *factual* attacks.  *Gottfried v. Germain (In re CP Ships Ltd. Sec. Litig.)*, 578 F.3d 1306, 1308 (11th Cir. Fla. 2009)  "A 'facial attack' on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id* (citing *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotations and alterations omitted)).  "'Factual attacks," on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as and affidavits are considered." *Id*. In a factual challenge, "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Id* (citing *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)).

## III.   ARGUMENT

### A.   THE PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS FOR DAMAGES UNDER STATE LAW, MARITIME LAW AND THE OIL POLLUTION ACT OF 1990.

The Defendants argue that the OPA preempts all maritime and state law remedies, and as such, any maritime and state law remedies claimed by Plaintiffs should be dismissed.  As stated in detail below, this conclusion is far from determined and assumes detailed and complicated

factual questions that require merits based discovery.  For these reasons alone, the Defendants'

arguments should be denied.  Moreover, the Defendants ignore the savings clause of the Oil

Pollution Act, which specifically permit Plaintiffs to allege additional, supplementary claims.  In

addition, the Defendants assume what is not included in the OPA statute should be summarily

prohibited.

> **1. Plaintiffs' claims are governed by state law, general maritime law and the Oil Pollution Act of 1990.**

Plaintiffs have standing to bring claims before this Court pursuant to state law, general

maritime law and the Oil Pollution Act of 1990 ("OPA"), and as such, they retains their right to

plead their claims in the alternative.

In deciding whether a negligence suit is within admiralty jurisdiction, the Eleventh

Circuit has stated: "Determination of the question whether a tort is 'maritime' and thus within

the admiralty jurisdiction of the federal courts has traditionally depended upon the locality of the

wrong.  If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if

the wrong occurred on land, it is not." See *Miller v. United States*, 725 F.2d 1311, 1313 (11th

Cir. 1984).

The Deepwater Horizon, a semi-submersible drilling rig, may be a vessel for purposes of

admiralty jurisdiction. See *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 497 (2005) (citing 1

U.S.C. § 3, which defines a "vessel" to include "every description of watercraft or other artificial

contrivance used, or capable of being used, as a means of transportation in water").  Explosions

aboard a vessel in navigable water resulting in potential disruption of maritime commerce

squarely meet the requirements of maritime jurisdiction. See *Grubart, Inc. v. Great Lakes

Dredge and Dock Co.*, 513 U.S. 527 (1995).  "With maritime jurisdiction comes the application

of substantive admiralty law."  See *East River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 864 (1986).

The Defendants erroneously argue that Plaintiffs cannot maintain a state law action simply based on the application of the Outer Continental Shelf Lands Act ("OCSLA"). However, the Defendants' assumption that state law could only apply through the OCSLA is ill conceived. In *Brockington v. Certified Electric, Inc.*, 903 F. 2d 1523 (11th Cir. 1990), The Court stated that "…federal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law." *Id.* at 1530.  As a result Courts have oftentimes recognized the "maritime but local" doctrine, which allows a judge in a maritime case to supplement maritime law with substantive state law. *See Askew v. American Waterways Operators, Inc.*, 93 S. Ct. 1590 (1973); *Bouchard Trans. Co. v. Updegraff,* 147 F. 3d 1344 (11th Cir. 1998).

In addition, to the extent that Plaintiffs' injuries and damages occurred or were consummated on land due to the activities of a vessel on navigable waters, state common law applicable to the local of the damage would provide a remedy. In fact, prior to passage of the Admiralty Extension Act of 1948, the only remedy available for damages done on land due to vessels on navigable waters was pursuant to state common law. See *The Admiral Peoples*, 295 U.S. 649,651 (1935) and *Cleveland Terminal and Valley R.R. Co. v. Cleveland Steamship Co.*, 208 U.S. 316 (1908). In passing the Act, Congress did not create a new cause of action, but made admiralty law a concurrent remedy with existing common law remedies to actions brought under the Act (46 U.S.C. 540). See *Shell Oil Co. v. The Tynemouth*, 205 F. Supp. 838 (E.D. La 1962) (vacated on other grounds); *Vega v. U.S.*, 86 F. Supp. 293 (SDNY 1949), aff'd 191 F. 2d 921 (2d

5

Cir. 1951), cert. denied 343 U.S. 909 (1952). Thus, Plaintiffs' claims arising from damages occurring to them on land could be governed by state common law.

Although not the exclusive basis for applying state common law, the application of the OCSLA could be another way in which state common law could apply to this case. The OPA does not preempt or displace the OCSLA. Defendants have not cited any statute or court decision which says it does. Considering the amount of merits based discovery necessary to determine whether the OCSLA applies, it is too early at this stage in the case to decide this issue on a motion to dismiss.

Obviously, the OPA may also apply to Plaintiffs' claims arising from the oil spill. The OPA was created to establish responsibility through federal statute for clean-up of oil discharges and certain damages caused by those discharges.  OPA sets out liability for a designated "responsible party" as strict liability. "Notwithstanding any other provisions or rule of law, and subject to the provisions of this Act, each responsible party … is liable for the removal costs and damages specified in section (b) of this section that result from such incident." See 33 U.S.C. § 2702(a).  For purposes relevant to this brief, OPA provides the following "damages" recoverable by affected parties: real or personal property, See 33 U.S. C. § 2702(b)(2)(B), subsistence use of natural resources, See 33 U.S.C. § 2702(b)(2)(C), and profits and earning capacity. See 33 U.S.C. § 2702(b)(2)(E). For these reasons, the Plaintiffs have standing to assert its claims under state law, maritime law and the OPA.

> **2.  The OPA preserves state and maritime law remedies as part of its savings clause.**

In support of their motions to dismiss, the Defendants overstate the preemptive breadth of the OPA as the exclusive remedy for oil spills.  There is no language in the OPA specifically

preempting state or maritime law and, in fact, the OPA contains two savings provisions preserving the applicability of traditional common law and maritime remedies:

> (e) Admiralty and Maritime Law – Except as otherwise provided in this Act, this Act does not affect -
>> (1) admiralty and maritime law; or
>> (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.  See 33 U.S.C. § 2751(e)(1)-(2).

In addition, the jurisdiction section of the OPA indicates a savings of state court remedies, with a choice of state or OPA law:

> (c) STATE COURT JURISDICTION – A State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, **may consider claims under this Act _or_ State law** and any final judgment of such court (when no longer subject to ordinary forms of review) shall be recognized, valid, and enforceable for all purposes of this Act.  See *Id.* at § 2717(c).

At §2717(a) – (c) of the OPA, entitled "RELATIONSHIP TO OTHER LAW", the OPA provides an indication of saving state law and maritime claims:

> (a) PRESERVTION OF STATE AUTHORITIES … - Nothing in this Act or the Act of March 3, 1851 shall -
>> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to –
>>> (A) the discharge of oil or other pollution by oil within such State; or
>> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under … State law, including common law.
> …
> (c) ADDITIONAL REQUIREMENTS AND LIABILITIES; PENALTIES. – Nothing in this Act … shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof –
>> (1) to impose additional liability or additional requirements;

Considering how the OPA is liberally constructed to benefit victims of oil pollution and punish its perpetrators, it is no surprise that courts have determined that OPA does not preempt state or federal law.  See *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000).  Specifically, courts have held that OPA's breadth does not preempt state law remedies.  See *Tanguis v. Westchester*, 153 F.Supp.2d 859, 863 (E.D. La. 2001) (holding that the OPA does not preempt state law in the area of oil spill liability and compensation); *Isla Corp. v. Sundown Energy LP*, 2007 WL 1240212 (E.D. La. 2007)(same); *U.S. v. Bodenger*, 2003 WL 22228517 (E.D. La. 2003)(same); *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630-31 (1st Cir. 1994) (using OPA to support validity of state liability statute permitting recovery of purely economic loss).  The United States Supreme Court, in dictum, expressed that given the OPA's savings clause, the statute was not intended to preempt state laws. See *U.S. v. Lock*e, 529 U.S. 89, 105-106 (2000).  Courts have also recognized that the OPA was not designed to preempt federal law remedies. See *U.S. v. Egan Marine Corp.*, 2009 WL 855964 (N.D. Ill. 2009) (US may pursue claims under both OPA and River and Harbors Act); *United States v. M/V Cosco Busan*, 557 F.Supp.2d 1058, 1063 (N.D. Cal. 2008) (US may pursue claims based on other federal statutes in addition to OPA claims even when seeking to recover the same damages); *National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F.Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (claimant may pursue general maritime law claims to the extent it seeks damages not covered by the OPA).

Alternatively, Article III, clause 2 of the Constitution creates the basis for admiralty and maritime law of the United States.  Because the federal courts are constitutionally afforded jurisdiction over maritime law, there is an extremely high bar for Congress to change or preempt long-standing judge created general maritime law. Indeed, the Second Circuit in *U.S. v. Oswego*

8

*Barge Corp.,* reviewed Supreme Court decisions and gleaned four factors to be considered when analyzing statutory preemption of general maritime law claims. See 664 F.2d 327 (2nd Cir. 1981). Those factors include (1) legislative history; (2) the scope of the legislation; (3) whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and (4) likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law." See *Id.* at 344. Applying these factors to the OPA statute:

- Legislative History: H.R. Conf. Repp. 101-653 (1990) states that the OPA savings provision "is intended to clarify that the House bill does not supersede [Art. III, clause 2 of the Constitution], nor does it change the jurisdiction of the District Courts …." Another legislative reference states, "It is not the intent of the Congress to change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States." See 1990 U.S.C.C.A.N. 779, 839).

- Legislative Scope: The OPA defines its scope explicitly through its statutory text. It defines what damages are covered in the Act, and the process for pursing the claim, while still being flexible in terms of supplementing rather than supplanting alternative claims and remedies.

- Whether judge made law would fill a gap left by Congress's silence: Applying judge-made general maritime law (if it is determined maritime law applies in this case) allows the Plaintiff to pursue claims that are not covered under the OPA. For example, the OPA is silent as to the potential extreme conduct of the Defendants, whereas state and maritime law specifically provide remedies to compensate Plaintiff and punish perpetrators for intentional, willful, wantonness or grossly negligent conduct (i.e., punitive damages).

- Likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law": The statutory language of OPA does not contain an explicit preemption clause or otherwise expressly preempt the general maritime law. When taken in context with OPA's strong savings clauses and silence on state and maritime law, the statute's face is not indicative of an intent to preempt those traditional remedies – only to supplement them. See Senate Report No. 101-94.

For these reasons, the Defendants' statutory preemption arguments are due to be denied.

The Defendants argue that this case should be dismissed based on cases that are inapplicable to the case at hand. Not one of the cases cited by Defendants involved only state law or maritime claims as the Plaintiffs have pled in this case. Namely, there are very few

instructive cases that speak to the application of the OPA, and its intertwining nature with state and federal laws.  It would also be safe to assume that no case on record involves the sheer breadth, devastation, factual and financial impacts as this particular case does. Nor is there a case that is instructive as to what Plaintiffs are to do when the responsible parties' claims procedure proves completely inadequate and confusing – as the Plaintiffs believe is occurring with the current oil spill.

While it has been held, albeit in completely different factual circumstances in foreign jurisdictions, that the OPA provides the exclusive federal remedy *for those damages recoverable under OPA* caused by oil spills, thereby limiting the application of general maritime law, **no court** has held that OPA preempts state common law claims or state law claims for damages not recoverable under OPA. The Defendants rely on *South Port Marine, LLC v. Gulf Oil Ltd. Partnership,* 234 F.3d 58 (1st Cir. 2000) and *Gabarick v. Laurin Maritime (America) Inc;* 623 F. Supp. 2d. 741 (E.D. La. 2009).  Neither case holds that OPA preempts common law tort claims generally or that the OPA preempts state common law claims for damages not recoverable in an action under the OPA. In *South Port Marine*, the plaintiff's common law state claims were dismissed due to the application of that state's oil pollution compensation statute, **not** as a result of application of the federal OPA. Moreover, the *South Port Marine* Court noted, "We have indeed acknowledged that Congress did not intend the OPA to bar the imposition of additional liability by the States. *South Port Marine*, 234 F.3d at 65 (citing *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630-31 (1st. Cir. 1994) (using OPA to support validity of state liability statute permitting recovery for purely economic loss). In *Gabarick*, the court held that general maritime law is only preempted by the OPA to the extent that the damages claimed under the common law claims are recoverable under the federal OPA.  *Gabarick;* 623 F. Supp. 2d. 741.

These courts, as well as Defendants here, do not address the recent decision in *Exxon Shipping v. Baker*, 128 S. Ct. 2605 (2008), wherein the Supreme Court refused to find that The Clean Water Act preempted common law claims for compensatory and punitive damages for economic losses when silent on the issue and when specifically protecting water and natural resources.  The holding in *Baker* strongly supports that, as with The Clean Water Act, the OPA does not preempt common law remedies.

Reading these cases together with a plain reading of the Act itself indicates that the Plaintiffs' claims are not preempted.  Moreover, given the breadth and circumstances surrounding this case, it is questionable whether the cases cited by the Defendants will be instructional at all in this jurisdiction or other jurisdictions that are incurring continuing and widespread damages from the oil spill.

### 3. Punitive Damages are included in the state and maritime remedies preserved by the OPA savings clause.

At the core of the Defendants' argument, they allege the OPA preempts all punitive damages potentially recoverable by the Plaintiffs. As stated *supra,* Plaintiffs' common law state and maritime claims, which would include punitive damages, are not preempted by the OPA as part of its broad savings clause. The same is true regarding Plaintiffs' common law claims for compensatory damage elements that are not specifically set out as elements of recoverable compensatory damages in the OPA (e.g. Potential economic damages to businesses and business owners other than lost profits such as lost investment capital, goodwill, loss of business value if forced to permanently cease business operations due to decreased cash flow and loss of property equity and related costs in the event of foreclosure.)

In the case at bar, Plaintiffs have alleged facts in the Complaint that, if proven, would support an award of punitive damages. It is axiomatic that states permit an award of punitive

damages for wanton misconduct and compensatory damages for personal injuries, property damages and economic losses not recoverable under the OPA. See *Atlantic Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009). In *Townsend*, the Supreme Court extended the remedy of punitive damages "to claims arising under federal maritime law." Like the remedy made available to plaintiffs alleging negligence and wantonness in *Townsend*, the Plaintiffs' claims of negligence and wantonness in this case should also entitle them to a potential award of punitive damages.

The Supreme Court's analysis in *Exxon Shipping Co. v. Baker,* 128 S.Ct. 2605 (2008), is a recent and highly instructive case regarding preemption of punitive damages in maritime cases. In *Baker*, defendant Exxon Shipping argued that the Clean Water Act ("CWA") preempted application of punitive damages. However, the CWA, like the OPA, contained a savings provision. Specifically, under 33 U.S.C. § 1321(b), the CWA protects "the navigable waters of the United States, adjoining shorelines, . . . [and] natural resources" of the United States, subject to "obligations . . . under any provision of law for damages to any publicly owned or privately owned property resulting from a discharge of any oil." See 33 U.S.C. § 1321(o). The Court, in responding to the issue of possible preemption of punitive damages (or other additional remedies for that matter) as a result of the CWA's statutory silence, stated:

> "Exxon could be arguing that, because the saving clause makes no mention of preserving punitive damages for economic loss, they are preempted. But so, of course, would a number of other categories of damages awards that Exxon did not claim were preempted. If Exxon were correct here, there would be preemption of provisions for compensatory damages for thwarting economic activity, or, for that matter, compensatory damages for physical, personal injury form oil spills or other water pollution. **But we find it too hard to conclude that a statute expressly geared to protecting 'water,' 'shorelines,' and 'natural resources' was intended to eliminate *sub silentio* oil companies' common law duties to refrain from injuring the bodies and livelihoods of private individuals.**

***

> 'In order to abrogate a common-law principle, the statute must
> speak directly to the question addressed by the common law; nor
> for that matter do we perceive that punitive damages for private
> harms will have any frustrating effect on the CWA remedial
> scheme, which would point to preemption.

See *Baker*, 128 S. Ct. at 2618 - 19 (quoting U.S. v. Texas, 507 U.S. 529, 534 (1993).

This Court should implement the same analysis the United States Supreme Court in *Baker* used. The text of the OPA, like the CWA, is **silent** as to punitive damages. Mere silence on the issue does not and cannot "evidence a clear intent to occupy the entire field of marine pollution remedies" as required by *Baker,* nor could it demonstrate a **clear indication** of congressional intent to occupy the entire field of remedies addressed by the common law. Considering that the purpose of the OPA, like the CWA, is to protect the waters, shores, and natural resources at risk to oil pollution, the deterrence mechanism behind punitive damages would not frustrate OPA's purpose just as the Supreme Court determined with regard to the CWA in *Baker.*

Moreover, as stated *supra*, the OPA, like the CWA, contains two savings clauses that preserve "any additional liability or requirements" with respect to a "discharge of oil or other pollution by oil within such State", or "obligations or liabilities of any person under … State law, including common law." See 33 U.S.C. § 2717(a)(1)(A)-(B); see also 33 U.S.C. § 2751(e)(1)-(2). It is not unreasonable to conclude that one of the claims saved under section (e) is for punitive damages. See *Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998) citing *Woodfork*, 642 F.2d at 970-71 (5th Cir. 1981)); *Moragne*, 398 U.S. at 387, 90 S.Ct. at 1781 ("[C]ertainly, it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established

and inflexible rules.") That punitive damages may be recovered in addition to OPA enumerated damages is entirely consistent with the legislative history of the Act, which demonstrates Congress intended OPA to be gap filling legislation that created a floor, not a ceiling, when working in conjunction with other laws. The Senate committee report states that what the Nation needed was a "**package of complimentary laws** at the international, national, and State level that will adequately compensate victims." S. REP. NO. 101-94, at 723 (emphasis added). This implies that the OPA was not intended to be the sole remedy available to victims. Additionally, the report indicated that the "theory behind the Committee action is that the Federal statute is designed to provide **basic protection**" for victims and that States wanting to impose greater standards may do so. Id. at 723 (emphasis added).

The Defendants overreach with their reliance on *South Port Marine, LLC v. Gulf Oil Ltd.* and *Clausen v. M/V New Carissa* to suggest that the Plaintiffs are not entitled to punitive damages. Both of these cases predate *Baker*. Furthermore, both cases reached their respective determinations based on *Miles v. Apex Marine Corp.*, a Jones Act case – not a water pollution case. See *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). Instead of following the *Miles* Court's policy guidance framework, the more recent *Baker* decision looked to the CWA to determine whether the statute evidenced "a clear indication of Congressional intent to occupy the entire field of pollution remedies." See *Baker*, 128 S. Ct. at 2619 (internal citations omitted); See also *Miles*, 498 U.S. at 27, 32-33 (Importantly, the *Miles* Court was concerned that neither the Jones Act nor DOHSA allowed recovery for loss of society damages, and wanted to preserve uniformity found in previous maritime death cases). Clearly, the *Baker* analysis is the proper analysis for determining whether punitive damages are preempted in oil pollution cases. See Brief of Petitioner at p.p. 28-29, 35-36, *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008)(No.

07-219) (The Court in *Baker* refused Exxon's invitation to use the rationale of Miles, Guevarra, and Glynn [looking to analogous statutes for "policy guidance"] to forbid punitive damages in a maritime pollution case). For these reasons, the Defendants' arguments against punitive damages are due to be denied.

      **4.**    **Because the OPA is not an exclusive remedy and Plaintiffs have not alleged an OPA count in their Complaint at this time, Plaintiffs did not have to satisfy the OPA presentment process and this Court does have jurisdiction.**

      The Defendants incorrectly state that since Plaintiffs' claims involve damages caused by the Deepwater Horizon oil spill, Plaintiffs had to satisfy the OPA presentment process before bringing suit against them.  This argument is flawed.  First, Plaintiffs did not incorporate an OPA count in their complaint – thus, they do not have to satisfy the presentment requirements of OPA before first filing suit pursuant to state and maritime law. Consequently, whether Plaintiffs have previously presented an OPA claim is irrelevant and so are the Defendants' attacks in their motions on this Court's subject matter jurisdiction in this matter.  Second, nowhere in the OPA statute are the Plaintiffs required to satisfy presentment prior to bringing traditional state and maritime law claims.  Again, the Defendants are impermissibly overstating the breadth and reach of the OPA into traditional state and maritime law remedies. To the extent maritime law is found to apply to the Plaintiffs' claims, the Court has jurisdiction in admiralty.

      Assuming, *arguendo*, that no federal question jurisdiction exist in this case (which it does) this court still has subject matter jurisdiction based upon diversity jurisdiction as clearly set out in the Plaintiffs' Complaint.  Thus, Defendants' 12(b)(1) Motion is due to be denied.

      **5.**    **Defendants not designated as "Responsible Parties" fall outside the purview of the OPA's statutory construction.**

Defendants HESI and Cameron argue that, since they have not been designated as responsible parties under the Oil Pollution Act, they cannot be sued by Plaintiffs. Defendants cannot have it both ways. These Defendants assume the Act applies to them – which it does not. The OPA was constructed to task only the designated responsible party. See 33 U.S.C. § 2702(a). As such, HESI and Cameron cannot seek refuge from state and maritime law simply because they are not deemed responsible parties under the OPA. The Plaintiffs are entitled to proceed with traditional state and maritime actions against those additional parties. Even assuming, *arguendo*, that these Defendants are correct that Plaintiffs cannot pursue OPA claims against them because they are not designated responsible parties, the Plaintiffs would still not be limited in pursuing traditional state and maritime remedies as articulated above against all parties.

**B.      THE DEFENDANTS' MOTIONS TO DISMISS ARE PREMATURE.**

**1.   The Defendants' choice of law arguments encompass factual inquiries that are improper for resolution at this stage.**

The Defendants' motions are based primarily on the preemptive effect of the OPA on state law and general maritime law.  Beyond the Defendants' overreaching assessment of the OPA's preemptive breadth, the Defendants cannot reach this argument until they first conclude which law governs – state, maritime or both. This determination can only be made after a thorough analysis of the specific facts surrounding the operation of the Deepwater Horizon drilling rig.  Considering this litigation remains in the earliest stages and the Defendants have not even filed an answer, there are insufficient facts before the Court to allow this determination to be made and Defendants' motions to dismiss should be denied.

For instance, to determine if the OCSLA and its state law borrowing provisions apply, the Court must determine that three necessarily fact determinate requirements have been met: (1) That the controversy arises on a site covered by the OCSLA; (2) That federal maritime law does

not apply of its own force; and (3) The state's law applicable is not inconsistent with federal law. However, determination of the application of maritime law is a "fact based inquiry." See *Domingue*, 923 F. 2d at 395. For those reasons, none of the cases cited by the Defendants involved a motion to dismiss, as the Court is faced with in the present motion. The various rulings cited by Defendants occurred only after discovery through a motion for summary judgment, or in a post trial motion after evidence was presented to a judge or jury.

Defendants, specifically HESI, cite to several cases (*Manuel, Domingue, Fontenot, Colomb* and *Case*) in support of their argument that the Deepwater Horizon was a vessel for purposes of the application of maritime law. See [Doc 62] Brief of HEMI at p. 7-8. These cases have little application to the OCSLA issues here as each case either dealt with personal injury claims under the Jones Act, or contract disputes involving maritime commerce - not to claims tied to the application of the OCSLA. Specifically, the Jones Act cases cited by Defendants simply reflect the historically liberal application of the Act by the Fifth Circuit "in the area of personal injury" to insure compensation to injured seamen. See *Houston Oil*, 827 F. 2d at 1053. Even in the Jones Act personal injury context, it has been stated that "unconventional craft" such as drilling or storage barges and dredges "[a]t the very least…must be in use for navigation or direct commerce at the time of the accident" in order to constitute a vessel. See *Fox v. Taylor Diving & Salvage, Co*., 694 F. 2d 1349, 1354 (5th Cir. 1983). As with the Jones Act cases, the contractual dispute analysis used to decide if maritime law applies differs from the OCSLA analysis (which may be the proper analysis to be applied to the case at bar). See *Domingue v. Ocean Drilling and Exploration Co*., 923 F.2d 393, 395 (5th Cir. 1991) (Determination whether a contract is a maritime contract depends on the relationship of the subject matter of the agreement to a maritime activity).

17

Attempting to resolve the second OCSLA element for application of state law (whether maritime law applies of its own force) also evidences why resolution of these issues will require a factual record before being decided. For maritime law to apply of its own force, the machine or equipment involved must again be found to be a "vessel" on a navigable waterway. Again, the Deepwater Horizon may or may not be considered a vessel for purposes of the second element required for application of state law under the OCSLA depending on the facts to be established. It is clear however that discovery could demonstrate the second element's inapplicability, which is further reason why the Defendants' motions to dismiss should be denied.

A factual inquiry is also necessary with respect to consideration of the "connection – to – maritime activity" test used to determine if maritime law is applicable because the maritime commerce requirement must also involve a "vessel". As stated by the Court in *Sohyde Drill & Marine v. Coastal States Gas*, 644 F.2d 1132, 1136 (5th Cir. 1981), the determination of a maritime activity must be considered "in light of the facts of the instant case."  Defendants, in support of their argument that the Deepwater Horizon drilling platform satisfies the "connection – to maritime activity" requirement, argue that oil spills from tankers were previously determined to be " connected to maritime activity." ([Doc 62] Brief of HEMI at p. 10). However, the factual difference between oil tankers and the deepwater horizon drilling platform is obvious – oil tankers are undeniably "vessels".

Other fact based issues are also present that have a bearing on resolution of the issues raised by Defendants in their briefs.  If the OSCLA applies, which state's common law applies? The answer to this question is a factually specific inquiry. What damages to plaintiff occurred on land versus navigable waters?  Depending on the facts, maritime or state common law may apply.

Without a thorough merits-based inquiry, it is unclear whether state law or maritime law will apply to the present litigation. Surely, Defendants' unsupported, factual assertions do not resolve these issues. The Plaintiffs are entitled to their own discovery to determine whether state or maritime law does (or does not) apply. For these reasons, Defendants' motions to dismiss are due to be denied.

### C.   THE DEFENDANTS' ECONOMIC LOSS DOCTRINE ARGUMENTS ARE DUE TO BE REJECTED

The Defendants' arguments regarding the economic loss doctrine are premature and misguided and therefore must fail. As stated *supra*, Plaintiffs need only present a set of facts in support of its claims which would entitle them to relief to survive the Defendants' motions to dismiss. *Jackam*, 800 F.2d at 1579. The Plaintiffs have clearly met this threshold. As stated above, until it is determined through factual inquiry what law may apply to Plaintiffs' claims, it is impossible to determine if the economic loss rule would apply, and if so, the scope of its application. A factual inquiry is necessary to determine what law may apply to Plaintiffs' claims and, at this early stage of this case, it is impossible to determine if the economic loss rule would apply and, if it does, the scope of its application. Also, upon an investigation of the merits, it is possible that the state law gap filler provisions of the OCSLA will apply, and thus Plaintiffs' damages would be foreseeable under common law negligence. In that event, a further factual inquiry would be necessary to determine which state law would apply.

### 1.   Application of the maritime economic loss rule is conduct specific.

As indicated in the cases analyzing the economic loss doctrine, the Defendants' conduct is important in determining whether the doctrine applies. Indeed, numerous courts have indicated that the maritime economic loss rule may not apply where intentional conduct caused the damages. See *Conoco, Inc. v. Halter-Calcasieu, LLC,* 865 So. 2d 813, 822 (La. App. 2003);

19

*Getty Refining & Marketing Co. v. MT FADI B*, 766 F.2d 829 (Pa. CA 1985) (adopted *Robins Dry Dock* and held that absent physical damage, there can be no recovery for purely economic harm resulting from **unintentional** maritime torts); see also *M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985);   Determining the nature of Defendants' conduct in this case requires factual discovery. Unfortunately, all claimants, including the Plaintiffs in the present motion, were not privy to the internal decisions and discussions between BP, Halliburton, Cameron and Transocean regarding the drilling, cementing, application and analysis of the blow out preventer, or the critical decisions leading to the Deepwater Horizon explosion.  Moreover, even after the leak occurred, Plaintiffs do not have the necessary information to determine which steps the Defendants took, or intentionally did not take, in laying out its remedial measures for protecting coastlines and fishing estuaries from the approaching oil.   All of these documents and discussions would be available to the Plaintiffs in formal discovery – of which the Plaintiffs are entitled.   Importantly, Plaintiffs have yet to receive an answer from the Defendants to the allegations set forth in Plaintiffs' complaint. As a result, the applicability of the economic loss rule to this case has yet to be determined.

Recent examples from the Exxon Valdez oil spill disaster indicate that Plaintiffs' investigation may show reckless, wanton and/or intentional conduct of the Defendants.  For example, evidence dating back to the Exxon Valdez disaster demonstrates the intentional lack of preparedness in the oil industry for major spills. Indeed, reports indicated that oil company response was "… unreasonably slow [and] confused," See S. Rep. No. 101-94, at 2 (1989), reprinted at 1990 U.S.C.C.A.N. 722, 723-24.and "was clearly inadequate to contain and recover the spilled oil." See United States General Accounting Office, Adequacy of Preparation and Response to the Exxon Valdez Oil Spill 1 (1989).   The problems identified with the inadequate

response "ranged from a shortage of equipment and skilled personnel to inadequate communications and organizational structures." See Id. at 14. Effectively, "[m]ajor problems were encountered because no one had realistically prepared to deal with a spill of that magnitude in the Prince William Sound." See Id. at 1. Compounding matters was the ineffectiveness of the recovery techniques used to manage the spill. See Id. at 2.

The accounts from the Exxon Valdez disaster are all too ironic – they seem to paint a very close picture to the type of behavior leading up to the Deepwater Horizon spill, and the failures in managing the subsequent leak. The combined alleged conduct between the Defendants leading up to the Deepwater Horizon explosion suggest the Defendants were engaged in conduct that falls well beyond simple negligence. (See http://online.wsj.com/article/SB100014240527487040_26204575266560930780190.html "BP Decisions Set Stage for Disaster" By Ben Casselman and Russel Gold, May 27, 2010. The Wall Street Journal. Last checked on July 01, 2010.) All of this information needs to be flushed out in discovery, and Plaintiffs should have the opportunity to do just that to establish the conduct of all parties.

For these reasons, Plaintiffs are entitled to merits based discovery to determine the specific conduct of the parties and Defendants' arguments must fail and its motions to dismiss denied.

### 2. The maritime economic loss rule applies to contract based losses.

As discussed more fully *infra*, where the maritime economic loss rule applies (and application of maritime law remains to be seen in the case at bar), its application has been limited to third parties remotely damaged as a result of commercial contractual relationships with a

entity directly damaged.  Plaintiffs' claims here do not arise from such a relationship and, as such, are not subject to the economic loss rule.

### 3. The circumstances of this case require specialized treatment under the economic loss doctrine.

Plaintiffs derives income and their livelihood by leasing rental property to vacationers who travel to the Alabama Gulf Coast to enjoy the bountiful natural resources of the area, specifically its beaches, waterways, and access to, what were before this environmental catastrophe, some of the best fishing grounds in the United States. As a result of the Deepwater Horizon oil spill and its devastating effects on these natural resources, the Plaintiffs' rental businesses are devastated. The Defendants cite *Robins Dry Dock* and the subsequent case *M/V Testbank* to suggest that all plaintiffs must have a proprietary interest in the thing damaged to recover economic damages in cases of unintentional tort. See *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 304 (1927); and *State v. M/V Testbank*, 752 F.2d at 1019 (5th Cir. 1985).  While the Plaintiffs do not dispute that *Robins Dry Dock* has been applied in maritime cases, the principle "does not bar every single economic loss claim that is unaccompanied by physical damage." See *Seko Energy Inc. v. M/V Margaret Chouest*, 820 F.Supp. 1008, 1011 (E.D. La. 1993).  Indeed, the full extent of the *Robins Dry Dock* rule is not clear in the Eleventh Circuit, except that fishermen and fishing boat owners can sue to recover economic damages without suffering physical damage to their proprietary interest.  *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813, 820 (11th Cir. 1984).

The instant case can be distinguished from *Robins Dry Dock* in that Plaintiffs do not complain that a party in contractual privity with them was injured by the acts of the Defendant, which in turn caused their damages.  Here, Plaintiffs seek recovery for the damages they have directly suffered as a result of Defendants' tortuous conduct.  The fact their direct damages are

economic in nature should not forestall Plaintiffs ability to recover for those damages.  See

*Herculese Carriers, Inc. v. State of Florida*, 720 F.2d 1201, 1201 (11th Cir. 1983) (Clark, J.,

concurring), vacated and affirmed by equally divided en banc court, 728 F.2d 1359 (11th Cir.

1984).  Indeed, Plaintiffs have been unable to find any Eleventh Circuit cases which hold that a

party, like Plaintiffs, who suffer direct damages resulting from Defendants' tortuous conduct, are

barred by the *Robins Dry Dock* rule.  The instant facts create a compelling reason to limit the

*Robins Dry Dock* rule to its original boundaries – to cases where unintentional conduct by the

defendant causes damage to a party in contractual privity with the plaintiff.

Plaintiffs contend that a determination of whether the *Robins Dry Dock* rule applies in

this case should not be done at this early stage of the case.  Such a determination should be made

only after the parties have the opportunity to conduct thorough and extensive factual discovery.

Thus, Defendants' motion to dismiss should be denied.

### 4. The *Robins Dry Dock* Rule May Be Inapplicable to Plaintiffs' State Common Law Claims

Although premature to conclude now based on the record before the Court, some state's

common law will likely apply to some of Plaintiffs' claims here (Alabama or Louisiana under

the OCSLA or Alabama based on damages occurring on land). The uncertainty of what state law

would apply alone warrants denial of the motions.

To this writer's knowledge, no Alabama court has applied the *Robins Dry Dock*

maritime economic loss rule to prevent recovery of economic damages under state common law

claims. Application of the rule to common law claims (excluding product liability claims for

damage to a product itself) would be inconsistent with Alabama law that has long allowed for the

recovery of purely economic damages in tort. Even if Louisiana common law applies, the

application of the *Robins Dry Dock* rule to the specific circumstances involved here is far from a foregone conclusion.

### 5.   The maritime economic loss rule has been overruled.

Plaintiffs assert that the *Robins Dry Dock/Testbank* rule does not apply to this instant case because it has been statutorily overruled by a 1986 amendment to the "Comprehensive Environmental Response, Compensation and Liability Act of 1980" ["CERCLA", 42 U.S.C. Section 9601 et seq]. CERCLA, 42 U.SC § 9607(h), which was passed after the *Testbank* decision, states:

> The owner or operator of a vessel shall be liable in accordance with this section, under maritime tort law, and as provided under section 9614 of this title notwithstanding any provision of the Act of March 3, 1851 (46 U.S.C. 183ff) [which is "The Limitation of Liability Act"] or the absence of any physical damage to the property interest of the claimant.

The language of the statute along with the legislative history of this amendment clearly overrule the *Robins Dry Dock* and *Testbank* cases, or, at the very least, is evidence of Congress's intent that third party damages under applicable Federal and State law should allow third party recovery of economic losses even though there is no direct physical damage. See 2A LEGISLATIVE HISTORY OF THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986,at 1180 (Committee on Env't & Public Works ed., 1990) (Sen. Bentsen stated, "It [the amendment] clarifies the congressional intent in that regard, allowing claims for third-party damages under applicable Federal and State law. Additionally, I have clarified that under CERCLA and maritime tort law third parties may recover for economic loss due to release of hazardous substances even though there is no direct physical damage."); *see also* H.R. CONF.REP. 99-962, 99th Cong., 2nd Sess. 1986 U.S.C.C.A.N. 3068, 1985 WL 25940 ("Section 107 of CERCLA is amended to clarify that a vessel owner would be liable in

accordance with section 107 under maritime tort law and the physical damage to the proprietary interest of the claimant is not required as a condition of liability.").

Thus, Plaintiffs claims are not barred by *Robins Dry Dock* and *Testbank* and Defendants' Motion to Dismiss is due to be denied.

### D.      THE PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CLAIMS

The Defendants' desperate attempt to dismiss the Plaintiffs' complaint due to the *Twombly* standard is improper and must fail. To survive a 12(b)(6) **motion to dismiss,** the complaint "does not need detailed factual allegations." See *Randall v. Scott, U.S. App. LEXIS 13377, at \*7 (11th Cir. 2010) (quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)). In fact, the Court in *Twombly* was careful to note that "we do not require heightened fact pleading of specifics." See *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. A complaint must only contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.,* at 557.

Unlike the plaintiffs in *Twombly*, the Plaintiffs in the present case have plausibly alleged that the Defendants negligent and/or wanton conduct surrounding the drilling of the Macondo well has subsequently resulted in economic harm to its businesses. They have done this by pointing out Defendants' failure to adhere to recognized industry standards of care and safety

practices, knowledge of the dangers associated with deep water drilling, and failure to take appropriate measures to prevent damages to the Plaintiffs and the Class Members. Plaintiffs' complaint therefore meets the liberal pleading standards of Rule 8(a), as well as *Twombly's* low threshold for particularity. *Id.*

The *Twombly* standard "calls for enough fact to raise a reasonable expectation that **discovery** will reveal evidence" of the claim. See *ADA v. Cigna Corp.*, *605* F.3d 1283, 1289 (11th Cir. 2010) *(quoting Twombly*, 550 U.S. at 555). Therefore, Plaintiffs are not required to specifically plead the individual degree or extent of Defendants' safety violations, knowledge, or culpability. For a negligence claim, the Court in *Gomez* held that a plaintiff must allege the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages. See *Gomez v. Pfizer, Inc.*, No. 09-22700-CIV, 2009 WL 4908937 (S.D. Fla. Dec. 21, 2009); s*ee also, e.g., Fla. Dep't of Corrections v. Abril*, 969 So. 2d 201, 204-05 (Fla. 2007). The Plaintiffs have done so in their Complaint. Specifically, the Plaintiffs have alleged the responsibilities of the Defendants on the Deepwater Horizon, *See [Doc. 1] Complaint,* pg. 3, par. 8 (BP, plc)*;* pg. 3-4, par. 9 (Cameron); pg 4, par. 10 (Halliburton); the duty the Defendants owed to the Plaintiffs, See *Id.*, pg. 7, par. 27-28; the Defendants breached their duty, See *Id.* at pg. 7, par. 29; specifically how the Defendants breached their duty, both jointly and severally, See *Id.* at 8, par. 30(a)-(t), 32 and 33; the Defendants breach caused the Plaintiffs' damage, See *Id.* at 4, par. 14; and that Plaintiffs have been damaged. See *Id.* at 4, par. 15.

The Plaintiffs were not privy to the specific conversations leading up to the Deepwater Horizon explosion and spill, nor were they engaged in the operations that caused the spill. The Plaintiffs were also not privy to the Defendants' internal decisions regarding the recovery and remediation efforts. Accordingly, how could the Plaintiff plead with specificity as the

Defendants suggest they should? This is precisely the reason why Plaintiffs are required to only set forth facts that palpably demonstrate a cause of action. The Defendants currently control the information (Among other things, this includes safety practices/warnings, employee profiles/complaints, and equipment manuals/installations/repairs.) that better reveals the exact degree/extent of their negligent and/or wanton conduct surrounding the drilling of the Macondo well. Ironically, the Defendants seem to indicate the Plaintiffs should know specific reasons why the Deepwater Horizon spill occurred, while at the same time, they ignore their own investigative progress which amounts to general "inconclusive" results. To hold the Plaintiffs to this level of knowledge at this early stage of the litigation is simply unreasonable and improper.

Further, with regard to Defendant HESI's alternative motion for more definite statement, the comments to Rule 12 and the cases say that a motion for more definite statement is proper only if the pleading is so vague and ambiguous that the defendant cannot frame a responsive pleading. It is clear HESI knows what is being claimed in this case. Rule 8 provides that a complaint need only be a short and plain statement of the claim showing that the pleader is entitled to relief, and motions for more definite statement are disfavored and seldom granted. *See Fathom Exploration, LLC v. Unidentified Shipwreck Vessel*, 352 F. Supp. 2d 1218, 1222 (S.D. Ala. 2005) Motions for more definite statement are not a substitute for discovery, and should not be granted where the information sought could better be obtained through discovery. *Id.* at 1221-22. As a disfavored remedy, motions for more definite statement should only be granted when the pleading is "unintelligible, or so hopelessly vague and ambiguous that a defendant cannot fairly be expected to frame a response or denial, at least not without risking prejudice." *Id*. Plaintiffs' complaint here clearly meets the test of Rule 8, and HESI's motion is due to be denied.

For these practical reasons, the Plaintiffs have met the requirements of *Twombly*, and the Defendants' motions on these issues should be summarily denied.

## V.   CONCLUSION

For the reasons set forth above: the Oil Pollution Act does NOT preempt Plaintiffs' state law and maritime claims; the Defendants' arguments are purely merits based and premature given the current status of this litigation; the economic loss rule does NOT bar recovery for Plaintiff's claims; Plaintiffs' claims have sufficiently plead their claims and no more definite statement is warranted.   Therefore, Defendants' motions to dismiss and motion for a more definite statement should be DENIED.

Respectfully submitted by,

s/ Christopher D. Boutwell
Jere L. Beasley (BEASJ1981)
Rhon E. Jones (JONE7747)
John E. Tomlinson (TOMLJ4095)
Christopher D. Boutwell (BOUTC1941)
J. Parker Miller (MILLJ7363)
A. Brantley Fry (FRYA5302)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36104
(334) 269-2343

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of August, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the Court's electronic filing system.

s/ Christopher D Boutwell
OF COUNSEL