## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SUNRISE RENTALS ENTERPRISES; *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 1:10-cv-00261-WS-M |
| BP PLC; *et al.*, | ) ) ) | |
| Defendants. | ) | |

## BP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), BP plc, BP America Inc. and BP Products North America Inc. (collectively "BP Defendants") moved to dismiss the Complaint. In opposition, Plaintiffs proclaim they have "clearly met" the thresholds for the BP Defendants' motion to dismiss. (Opp. Br. at 16.) However, such proclamations are not enough to make it so. On its face, the Complaint lacks any allegations that Plaintiffs have submitted claims to the Oil Pollution Act of 1990 (OPA) claims process instituted by BP. Also plain from the Complaint is that Plaintiffs seek purely economic loss damages, and that federal law pursuant to the Outer Continental Shelf Lands Act or federal maritime law would apply to Plaintiffs' negligence and wantonness claims absent OPA, not state law. Because federal law, and not state law, would apply to Plaintiffs' tort claims, OPA, as a comprehensive rulemaking in the field of oil spills, acts to

displace the federal law that would otherwise govern Plaintiffs' claims.

Accordingly, this Court lacks jurisdiction to hear Plaintiffs' claims in light of their

failure to first comply with OPA's presentment requirement, nor do Plaintiffs state

a claim for damages covered by OPA until they satisfy OPA's presentment

requirement.

Moreover, absent OPA displacement, Plaintiffs' claims would be barred in

any event.  Pursuant to the federal law that would otherwise apply, either through

OCSLA or maritime law, the economic loss rule prohibits recovery of economic

losses where, as here, there is not physical injury to a proprietary interest.  For

these reasons, as well as those in the BP Defendants' opening memorandum,

Plaintiffs' Complaint fails to satisfy Rule 12(b)(1) or Rule 12(b)(6).

## ARGUMENT

Under Rule 12(b)(1), a court may consider whether there is federal

jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by

undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts.  *Rance v. D.R.*

*Horton, Inc.*, 316 Fed. Appx. 860, 862 (11th Cir. 2008) (citations omitted).  As

such, Rule 12(b)(1) is relevant here as it is clear from the face of Plaintiffs'

Complaint that their claims fall within the ambit of OPA's presentment

requirement.  This Court lacks jurisdiction until Plaintiffs have presented claims

through BP's OPA claims process.

Rule 12(b)(6) is equally applicable here.  Under Rule 12(b)(6), "a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief."  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  Conclusory allegations and legal conclusions will not suffice to prevent a motion to dismiss.  *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  Plaintiffs' allegations establish that they seek purely economic losses.  As discussed more fully below, an OPA claim for such damages cannot be stated until the presentment requirement is met, and claims for such damages are barred by federal law, whether it is OCSLA or maritime law that governs, pursuant to the economic loss rule.

**1.      Plaintiffs Fail To Allege That They Complied With OPA's Presentment Requirement And The Complaint Is Therefore Deficient.**

Contrary to Plaintiffs' assertions, their claims against the BP Defendants are premature because they have not complied with OPA's mandatory presentment requirement.  The text of OPA is clear: "*all claims for* removal costs or *damages shall be presented first to the responsible party* or guarantor of the source designated under section 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis added); *see also Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995) (dismissing both OPA and various Florida statutory and common law claims for failure to comply with OPA's presentment requirement).  Therefore, where claimants, like Plaintiffs, seek economic loss damages or property damages from an oil spill in federal waters, they must first present claims

to a responsible party's claims process before filing suit.  If claimants fail to do so, their claims should be dismissed for lack of subject matter jurisdiction.

Plaintiffs argue that non-OPA claims do not have to be first presented to the responsible party.  (Opp. Br. at 11.)  Plaintiffs cite no case for their claim and ignore Eleventh Circuit precedent, the *Boca Ciega* opinion.  Plaintiffs' assertion that they do not need to present their claims pursuant to OPA is unfounded.  In fact, this argument is an admission that they have not done so, and is therefore fatal.  Accordingly, Plaintiffs' Complaint should be dismissed on this ground alone.

**2.     OPA Displaces Federal Law That Would Otherwise Govern Plaintiffs' Claims.**

Plaintiffs' discussion regarding whether OPA displaces state law claims is inapposite.  The case law is well-settled that in a case of this nature, absent OPA, federal law pursuant to either OCSLA or maritime law would govern Plaintiffs' tort claims, not state law.  The facts necessary to make this determination are already clear and before this Court.  Moreover, Plaintiffs' choice of law arguments regarding which of OCSLA and maritime law will apply are irrelevant.  Regardless of which law would apply, OPA displaces federal common law here because OPA constitutes a comprehensive rulemaking in the field of oil spills.  As such, Plaintiffs must comply with OPA's presentment requirement before filing suit.

**(a)     OCSLA Could Apply to Plaintiffs' Claims.**

The accident arose on the outer Continental Shelf.  (*See* Compl. ¶ 2); 43 U.S.C. §§ 1331(a), 1301(a)(2) (defining the Outer Continental Shelf as submerged lands outside three miles distant from any state coast).  Plaintiffs also allege that the BP Defendants' negligence and wantonness occurred at the rig's location, on the Shelf.  (*See* Compl. ¶¶ 2, 30.)  Because each state's authority ends three miles off its shore, state law cannot apply to this case of its own force.  "The seaward boundary of each original coastal State is approved and confirmed as a line three geographical miles distant from its coast line or, in the case of the Great Lakes, to the international boundar[ies]."  43 U.S.C. § 1312.[1]  Therefore, Plaintiffs' argument for the application of state law is irrelevant.

OCSLA defines federal law as the exclusive law applicable to the seabed, the subsoil, and the relevant structures on the outer Continental Shelf.  *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355-57 (1969).  Under OCSLA, federal law extends to "all artificial islands, and all installations and other devices permanently

---

[1]  The remainder of 43 U.S.C. § 1312 provides as follows:  "Any State admitted subsequent to the formation of the Union which has not already done so may extend its seaward boundaries to a line three geographical miles distant from its coast line, or to the international boundaries of the United States in the Great Lakes or any other body of water traversed by such boundaries."  By contrast, the federal government's jurisdiction extends exclusive federal power from the three-mile point of state jurisdiction out to 200 miles from the land mass of the United States — an area known as the "exclusive economic zone."  *See* United Nations Convention on the Law of the Sea, arts. 56-57, 1833 U.N.T.S. 397 (Dec. 10, 1982); Presidential Proclamation No. 5030, 48 Fed. Reg. 10,605 (Mar. 10, 1983) (proclaiming U.S. sovereign rights and jurisdiction within the EEZ).  Hence, the MC 252 well, which is located approximately 52 miles off the coast of Louisiana, falls into the federal government's exclusive sphere of jurisdiction and outside the three-mile span of state common law authority of any state.  Moreover, even within the three-mile limit, federal power is paramount.  *See United States v. Louisiana.*, 339 U.S. 699, 704 (1950) ("The marginal sea is a national, not a state concern.  National interests, national responsibilities, national concerns are involved. The problems of commerce, national defense, relations with other powers, war and peace focus there. National rights must therefore be paramount in that area.").  In practice this means that the federal government possesses the power to preempt state law as it chooses within the three-mile limit and that federal laws within that sphere are also protected by implied preemption.  Here, however, preemption via the paramountcy doctrine does not need to be resorted to.  State law simply has *no* application, even if subject to the paramountcy doctrine, beyond the three-mile limit.

or temporarily attached to the seabed [of the outer Continental Shelf], which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1). The Deepwater Horizon meets all the requirements for federal law to apply under OCSLA. First, the Deepwater Horizon was located on the outer Continental Shelf. (*See* Compl. ¶ 2.) Second, the Deepwater Horizon is a semi-submersible mobile drilling rig. (Opp. Br. at 4.) Federal law under OCSLA applies to semi-submersible drilling rigs. H. R. Rep. No. 95-590, § 203, at 128 (1978) ("The Committee intends that federal law is, therefore, to be applicable to activities on drilling ships, semi-submersible drilling rigs, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances"); *see also Curtis v. Schlumberger Offshore Serv., Inc.*, 849 F.2d 805 (3d Cir. 1988) (applying OCSLA to an employee of a semi-submersible drilling rig). Third, the Deepwater Horizon was engaged in drilling an exploration well for oil, which meets the statute's definition of "exploration." (*See* Compl. ¶¶ 2, 8); 43 U.S.C. § 1331(k) ("any drilling, whether on or off known geological structures"); 43 U.S.C. § 1331(q) (defining minerals to include oil).

Plaintiffs argue that state law might nevertheless apply pursuant to OCSLA under its "choice of law" provision. (Opp. Br. at 21.) Under this provision, state law does *not* apply of its own force, but is transformed into federal law because the federal sovereign has made a voluntary choice to borrow state law and apply it as surrogate federal law to a federal territory. 43 U.S.C. § 1333; *Gulf Offshore Co. v.*

*Mobil Oil Corp.*, 453 U.S. 473, 480-481 (1981); *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *White v. Chevron, U.S.A., Inc.*, Civ. A. No. 90-0113, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990).

Plaintiffs are also incorrect that this Court cannot yet determine what state law would be borrowed under OCSLA.  Determining the "adjacent state" depends on the four factors from *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000):  (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be off of; (3) prior court determinations; and (4) projected boundaries.  Plaintiffs do not dispute that Louisiana is the state that lies closest to the rig's location on Mississippi Canyon Block 252 ("MC252"), that federal agencies consider MC252 to be off the coast of Louisiana,[2] or that federal courts have already concluded that Mississippi Canyon blocks are adjacent to Louisiana.  *See Ronquille v. MMR Offshore Serv., Inc.*, 353 F. Supp. 2d 680 (E.D. La. 2004) (Mississippi Canyon Block 809); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948 (E.D. La. 1997) (Mississippi Canyon Block 20).  The Deepwater Horizon also falls within the area of Louisiana's project boundaries created by extending the southeast-slanting border of Louisiana.  *See NOAA Gulf Response Website,* http://gomex.erma.noaa.gov/erma.html#x=-

---

[2] The *Snyder* court cited maps of Coast Guard Captain of the Port Zones.  208 F.3d at 526.  A comparison of the New Orleans and Mobile Captain of the Port Zones show that MC252 would fall in the New Orleans zone.  (*See* Port Zone Maps Website, http://homeport.uscg.mil/mycg/portal/ep/contentView.do?contentTypeId=2&channelId=-24886&contentId=135536&programId=50398&programPage=%2Fep%2Fprogram%2Feditorial.jsp&pageTypeId=1 3489 (follow "New Orleans" and "Mobile") (last visited Aug. 12, 2010), screenshots attached hereto as Exhibits 1 and 2.)  The BP Defendants request the court take judicial notice of these maps.  *See Marsh v. Butler County*, 268 F.3d 1014, 1049 n.3 (11th Cir. 2001) (taking judicial notice of map on the Mapquest internet site).

88.52783&y=29.52089&z=8&layers=5723 (last visited Aug. 12, 2010), screenshot attached hereto as Exhibit 3.)

**(b)     OPA Displaces Claims Under OCSLA.**

Plaintiffs' argument that OPA does not displace OCSLA is unfounded. Plaintiffs cite no case law in support of their assertion.  (*See* Opp. Br. at 6.)  OPA displaces Plaintiffs' claims if they fall under OCSLA because OPA occupies the federal field of responding to oil spills on the waters of the United States.  "All law applicable to the Outer Continental Shelf is federal law."  *Gulf Offshore Co.*, 453 U.S. at 480-81 (quoting 43 U.S.C. § 1333(a)(2).  The federal law applied under OCSLA is federal common law, supplemented where necessary with the law of the adjacent state.  *Id.*  The Supreme Court has found, however, that the federal common law is supplanted when Congress has engaged in comprehensive rule-making in fields previously governed by federal common law.  *See, e.g.*, *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304 (1981) (Clean Water Act displaced federal common law of interstate pollution).  OPA displaces OCSLA because it is such a comprehensive rule-making.  *See, e.g.*, *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("OPA represents Congress' attempt to provide a comprehensive framework in the area of marine oil pollution." (internal quotations omitted)).

**(c)     Federal Maritime Law Could Apply to Plaintiffs' Claims.**

Admiralty jurisdiction is determined by the locality and maritime nexus test of *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). Plaintiffs' argument is that the determination of the locality and maritime nexus prongs is too fact-dependent to be made at this time and on this record. (Opp. Br. at 15.) This is not so. Plaintiffs make this argument without any analysis of the admiralty jurisdiction test or the agreed facts of this incident.

To determine whether there is a maritime nexus, the court must (1) assess the general features of the incident and determine whether the type of incident has a potentially disruptive impact on maritime commerce; and (2) determine whether the general character of the activity shows a substantial relationship to traditional maritime activity. *Anderson v. United States,* 317 F.3d 1235, 1237 (11th Cir. 2003) (quoting *Grubart*, 513 U.S. at 534).

This type of incident has obvious potential to disrupt maritime commerce. A damaged rig has the potential to disrupt the navigation and activities carried on by shipping vessels, fishing vessels, and other drilling vessels. The facts of this incident show that the potential for disruption has been borne out. The general character of Deepwater Horizon's activity also bears a substantial relationship to traditional maritime activity. At an "intermediate level of possible generality," offshore drilling involves the discovery, recovery, and sale of resources taken from the seabed. *Grubart*, 513 U.S. at 538. Federal courts have consistently held that oil and chemical spills are maritime torts. *See, e.g.*, *La. ex rel. Guste v. M/V*

9

*TESTBANK*, 752 F.2d 1019, 1027 (5th Cir. 1985); *In re the Exxon Valdez*, 767 F. Supp. 1509, 1514 (D. Alaska 1991)*; United States v. Bear Marine Serv.*, 509 F. Supp. 710, 717 (E.D. La. 1980); *Burgess v. M/V Tamano*, 370 F. Supp. 247, 249 (D. Me. 1973).

In *Broughton Offshore Drilling, Inc. v. South Cent. Mach., Inc.*, 911 F.2d 1050 (5th Cir. 1990), two of the recently-repaired hydraulic cylinders that held up the blowout preventer on a drilling barge failed.  The drilling barge had to be salvaged, towed to a dry dock, and repaired.  The owner of the drilling barge sued the companies that had repaired the hydraulic cylinders for the damage caused by their failure.  The appellate court determined that admiralty jurisdiction applied. The court cited several facts: the incident occurred on the Gulf of Mexico, "a body of water teeming with maritime activity," there was damage to the rig itself, and the damages were "intensely maritime in nature and could not easily have occurred in land-based operation."  *Id.* at 1052-53.  The Deepwater Horizon incident is even more intensely maritime, as the rig was not merely damaged, but actually sank, and the effect of the resulting oil spill has been integrally water-based.

**(d)    Federal Maritime Law Displaces State Law.**

Plaintiffs' own cases agree that it is the general rule that admiralty jurisdiction brings the application of substantive maritime law.  *See Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1528-29 (11th Cir. 1990); (Opp. Br. at 5.) There are exceptions that allow state law to preempt maritime law, but they do not

apply here.  State law may not apply in the place of maritime law if the state law "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law".  *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994).

The rule of *Robins Dry Dock* is a characteristic feature of the general maritime law.  *See In re Brown Water Towing I, Inc.*, No. 02-41062, 2003 WL 21015917, at *1 (5th Cir. Apr. 8, 2003) (not allowing state law to preempt *Robins Dry Dock* under both prongs of the test).  The Fifth Circuit Court has also barred state law preemption of the maritime economic loss rule on the grounds that it would interfere with the uniformity of maritime law.  In *TESTBANK*, a ship collision caused a spill of hydrobromic acid and pentachlorophenol.  The district court granted summary judgment as to all the maritime claims for purely economic loss.  The en banc Fifth Circuit Court affirmed.  The plaintiffs also attempted to recover their economic losses under state law.  The court refused to allow this:

> [T]he federal interest in protecting maritime commerce is often best served by the establishment of uniform rules of conduct.  We believe that such is the case here.  The *Robins* rule has proved to be a workable and useful tool in our maritime jurisprudence.  To permit recovery here on state law grounds would undermine the principles we seek to preserve today.

752 F.2d at 1032; *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 379-80 (5th Cir. 2006); *IMTT-Gretna v. Robert E. Lee SS*, 993 F. 2d 1193, 1195 (5th Cir. 1993).  Forcing maritime actors to defend against a limitless chain of recovery would compromise uniformity, predictability, and, ultimately, maritime

commerce itself.  *See TESTBANK*, 752 F.2d at 1032 (noting that uniform rules of conduct protect maritime commerce).  Contrary to Plaintiffs' assertions, maritime law applies exclusively even where the damage occurred on land.  *See TESTBANK*, 752 F. 2d at 1031-32 (refusing to allow state law claims for purely economic losses from shoreside damages).

Plaintiffs have failed to acknowledge these clear and persuasive cases from the Fifth Circuit.  Plaintiffs instead cite cases such as *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996), where the Supreme Court was explicitly determining only the question of whether non-seafarers who died in territorial waters could have recourse to state wrongful death statutes.  516 U.S. at 211, n.8. Plaintiffs also cite *Brockington*, where state law applied because the dispute was "peculiarly 'local'." 903 F.2d at 1532.  The plaintiffs and defendant were local, the accident occurred within state waters, and the relevant contract provided for state law to apply.  Similarly, in *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973), the court noted that states may establish rules applicable to water within state limits and conduct within state borders.  Further, state law could apply instead of maritime law through the Admiralty Extension Act only "absent a clear conflict with the federal law." *Id.* at 341.  Where the accident occurred outside state boundaries, as here, federal maritime law controls.

**(e)**      **OPA Displaces Claims Under Federal Maritime Law.**

OPA displaces general maritime law claims for remedies that are already provided for under OPA.  Plaintiffs cite cases for the irrelevant proposition that OPA does not preempt state laws.  (*See* Opp. Br. at 7-8); *see, e.g.*, *Isla Corp. v. Sundown Energy, LP*, Civil Action No. 06-8645, 2007 WL 1240212, *2 (E.D. La. Apr. 27, 2007) (recognizing OPA as "the exclusive *federal* remedy" before explaining that OPA does not preempt state law regarding oil spill remedies).  Plaintiffs also appear to misunderstand their cases that do address federal maritime law.  In *Tanguis,* 153 F. Supp. 2d at 867, the plaintiffs opposed the removal of their case and argued that OPA did not provide a basis for federal jurisdiction in part because general maritime law did not and because of OPA's maritime law savings clause.  The court rejected this argument, relying on that fact that OPA displaces federal maritime remedies for the damages it covers:

> The Court finds that OPA establishes an entirely new, federal cause of action for oil spills. . . . This new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies.  This result is reflected in the first clause of OPA's admiralty and maritime savings provision:  '*Except as otherwise provided in this chapter*, this chapter does not affect… admiralty and maritime law…'

*Id.* (citations omitted; emphasis original); *see also Gabarick v. Laurin Maritime (Am) Inc.*, 623 F. Supp. 2d 741, 746 (E.D. La. 2009) ("Hence, the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages.").  In *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000), the court acknowledged OPA's maritime savings clause, but concluded that OPA preempted the punitive damages traditionally available under

federal maritime law. The court noted that "[s]ection 2702 sets forth a list of damages recoverable under the OPA, briefly describing each type. As we have noted already, this scheme is comprehensive." 234 F.3d at 65.

Plaintiffs' tangential arguments and citations to *United States v. Egan Marine Corp.*, No. 08-C-3160, 2009 WL 855964 (N.D. Ill. Mar. 30, 2009), and *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008), are unavailing. These two decisions contradict rulings from other courts that have considered the question, including the First Circuit Court and the Eastern District of Louisiana cases discussed above. OPA has clear language specifying covered damages and there is clear case law interpreting OPA as displacing federal maritime law remedies for those damages. OPA covers revenue and lost profit damages. 33 U.S.C. §2702(b)(2)(D), (E). Plaintiffs assert that "[t]he spill has damaged and will continue to damage the value of Plaintiffs' and Class Members' real and personal property, their earning capacity, business income, and/or use of natural resources." (Compl. ¶ 2.) In this case, therefore, Plaintiffs' alleged damages are already provided by OPA and their claims under maritime law are displaced.

**3.    Plaintiffs' Claims Are Also Barred By The Economic Loss Rule.**

Even if OPA did not displace both federal maritime law and OCSLA claims, Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(6). Plaintiffs fail to state claims for negligence and wantonness because such claims are barred by the

economic loss rule.  This rule prohibits recovery for economic losses where there is no physical injury to a proprietary interest.  This is the case regardless of whether maritime law or OCSLA applies to Plaintiffs' claims.  *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927); *PPG Indus., Inc. v. Bean Dredging*, 447 So. 2d 1058, 1062 (La. 1984) (Louisiana law borrowed through OCSLA).[3]

> **(a)    The Rule of *Robins Dry Dock* Has Not Been Overruled By CERCLA.**

Plaintiffs argue that one sentence in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") has overruled the economic loss rule pronounced in 1927 in *Robins Dry Dock*.  (*See* Opp. Br. at 19-20.)  Plaintiffs' argument relies only on statements from the legislative history.  (*See* Opp. Br. at 20.)  CERCLA's liability provision demonstrates why these statements do not have Plaintiffs' desired meaning.  First, the liability provision stipulates that only "covered persons," as defined in the statute, are liable for the listed damages.  *See* 42 U.S.C. § 9607(a)(1-4).  Second, a private party suing under CERCLA can only recover response costs incurred if the party actually "acted to contain a release threatening the public".  *In re Taira Lynn*, 444 F.3d at 381-82.

---

[3] Even if one accepted Plaintiffs' claim that OCSLA would borrow Alabama law for Plaintiffs' claims (which it would not), Plaintiffs cite no case or statute for their contention that Alabama would not apply the economic loss rule.  (*See* Opp. Br. at 21-22.)  There is every indication that the economic loss rule would apply under Alabama law.  *See, e.g.*, *Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671 (Ala. 1989) (applying economic loss rule to bar action in tort for damage to front-end loader where there was no property or personal injury besides to the machine itself); *Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.*, 901 So. 2d 84, 106-07 (Ala. 2004) (stating *Lloyd* rule).

Economic losses to private parties are therefore limited to those that resulted from directly acting to contain a release caused by a party covered under CERCLA and sued under CERCLA.  In *In re Taira Lynn*, for example, the Fifth Circuit Court considered businesses' claims under CERCLA for economic losses caused by a mandatory evacuation after a vessel collided with a bridge and spilled chemicals.  The court reversed the denial of summary judgment as to these claims, finding that "the claims at issue here are for economic losses resulting from the evacuation.  None of the claimants has even alleged that it incurred costs in acting to contain the gaseous cargo."  444 F.3d at 382.  The Plaintiffs here fail on all counts: they are not suing under CERCLA and they are not alleging economic losses that resulted from acting to contain the oil spill.

*In re Taira Lynn* provides further evidence that Plaintiffs' CERCLA clause is limited to the statute in which it is contained.  The Fifth Circuit decided *In re Taira Lynn* in 2006, well after this sentence was added to CERCLA.  The plaintiffs had brought general maritime law claims in addition to their CERCLA claims, but the court nevertheless invoked *Robins Dry Dock* and dismissed the plaintiffs' maritime law claims without a single reference to CERCLA.  *See* 444 F.3d at 377-79.

**(b)     Plaintiffs Have Not Alleged Any Intentional Torts That They Claim Would Fall Outside the Economic Loss Rule.**

Plaintiffs argue that merits-based discovery is necessary to determine whether the BP Defendants' conduct was intentional and therefore outside the

scope of economic loss rule.  (Opp. Br. at 16-18.)  Plaintiffs' own citations, however, demonstrate that their argument lacks any merit in this case.  Plaintiffs' Complaint includes one count, alleged negligence and/or wantonness.  (Compl. ¶¶ 26-34.)  The economic loss rule, however, unquestionably applies to claims of negligence where there is not physical harm.  *See Getty Ref. & Mktg. Co. v. MT Fadi B*, 766 F.2d 829, 833 (3d Cir. 1985).  Plaintiffs' other citation notes that "[e]ven gross negligence does not meet the intentional act requirement."  *Conoco, Inc. v. Halter-Calcasieu, L.L.C.*, 865 So.2d 813, 822 (La. Ct. App. 2003).  Gross negligence and the wantonness that Plaintiffs allege are the same concepts.  *See Falkowski v. Maurus*, 637 So.2d 522, 528 (La. Ct. App. 1993) (applying Louisiana law).  Plaintiffs have therefore not alleged an intentional tort to which their argument may apply.

     **(c)**     **The Rule of *Robins Dry Dock* Applies to This Case and These Plaintiffs.**

Plaintiffs argue that *Robins Dry Dock* should apply only in cases where the plaintiff's economic damage resulted from physical damage to the property of a party with whom they were in privity.  (Opp. Br. at 18-19.)  This is an old argument, and one that has not been adopted by the Eleventh Circuit.  Indeed, the Fifth Circuit, sitting en banc, specifically rejected this argument in *TESTBANK*, stating:

> The *Robins* court, however, pushed the steamship company's contract arguments aside and directly addressed its effort to recover in tort.  The language and the cases the *Robins* Court pointed to as 'good statement[s]' of

> the principle make plain that the charterer failed to recover its delay claims from the dry dock because the Court believed them to be too remote. . . . Indisputably, the *Robins Dry Dock* principle is not as easily contained as plaintiff would have it.

752 F.2d at 1023-24; *see also Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994). Plaintiffs cite Judge Clark's concurrence requesting a reconsideration of *Robins Dry Dock*. (Opp. Br. at 19.) Plaintiffs acknowledge that Judge Clark failed to carry the day. *Hercules Carriers, Inc. v. State of Fla.*, 728 F.2d 1359 (11th Cir. 1984) (en banc) (affirming panel court's application of *Robin's Dry Dock*). Indeed, Judge Clark's argument has not been adopted in the nearly 27 years since he wrote it. The rule of *Robins Dry Dock* is simply not limited to a contractual setting in this circuit, and this Court should not be the first to draw that line.

The Eleventh Circuit has clearly adopted the bright-line rule set forth by the United States Supreme Court in *Robins Dry Dock*, 275 U.S. at 309, and barred recovery for general maritime law tort claims for purely economic losses absent physical injury to a proprietary interest. *See Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34, 35 (11th Cir. 1982) (applying *Robins Dry Dock* to affirm dismissal of negligence claims alleging purely economic damages, and rejecting attempts to question the rule's validity).

*Miller Indus. v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir. 1984), does not change this analysis. In *Miller*, the court refused to apply the economic loss rule to *post-sale negligence* claims (i.e. products liability claims) where a

18

defendant knowingly sold a defective engine part that subsequently failed and caused the vessel to be delayed during its fishing season.  *Id.* at 815-818. Furthermore, this case has arguably been overruled by the Supreme Court.  *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 875 (1986) (holding that whether stated in negligence or strict liability, no products liability claim lies in admiralty when a commercial party alleges injury only to the product itself resulting in purely economic loss); *see also Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 679 n.2 (5th Cir. 2008) (noting that due to the *East River* decision, "*Miller* is also seemingly no longer good law.") Moreover, even if this case were applicable, this case could *only* apply to fisherman and fishing boat owners.  Here, Plaintiffs and the purported class are owners, operators, and those who derive income from rental properties on the Gulf Coast in Mobile and Baldwin counties, Alabama.  (Compl. ¶¶ 5, 6, 17.)  Plaintiffs have cited no binding authority justifying any limitation of this rule as it applies to the Plaintiffs or the purported class.

## CONCLUSION

Plaintiffs' Complaint should be dismissed for any of three independent reasons.  First, Plaintiffs failed to present their claims to the BP Defendants before filing suit.  Second, OPA displaces Plaintiffs' claims.  Third, Plaintiffs' claims are barred by the economic loss rule.

s/ *Marchello D. Gray*
John M. Johnson (JOHNJ7318)
Adam K. Peck (PECKA0851)
William H. Brooks (BROOW3330)
Marchello D. Gray (GRAYM6384)
**LIGHTFOOT, FRANKLIN & WHITE, L.L.C.**
400 North 20th Street
Birmingham, Alabama  35203
Telephone:   (205) 581-0700
Facsimile:    (205) 581-0799
JJohnson@lightfootlaw.com
APeck@lightfootlaw.com
Wbrooks@lightfootlaw.com
MGray@lightfootlaw.com

Attorneys for BP Defendants

OF COUNSEL:

Richard C. Godfrey, P.C.
John T. Hickey, Jr., P.C.
J. Andrew Langan, P.C.
**KIRKLAND & ELLIS, LLP**
300 North Lasalle Street
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
RGodfrey@kirkland.com
JHickey@kirkland.com
ALangan@kirkland.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 12th day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Jere L. Beasley, Esq.
Rhon E. Jones, Esq.
David B. Byrne, III, Esq.
John E. Tomlinson, Esq.
Christopher D. Boutwell, Esq.
J. Parker Miller, Esq.
Anna Brantley Fry, Esq.
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
218 Commerce Street
Montgomery, AL 36104

John N. Leach, Esq.
Joseph P. H. Babington, Esq.
Russell C. Buffkin. Esq.
**HELMSING, LEACH, HERLONG, NEWMAN & ROUSE, P.C.**
Post Office Box 2767
Mobile AL 36652

Donald E. Godwin, Esq.
Bruce W. Bowman, Jr., Esq.
Jenny L. Martinez, Esq.
Floyd R. Hartley, Jr., Esq.
Gavin E. Hill, Esq.
**GODWIN RONQUILLO, P.C.**
1201 Elm Street, Suite 1700
Dallas, TX 75270

Robert Alan York, Esq.
**GODWIN RONQUILLO, P.C.**
1331 Lamar, Suite 1665
4 Houston Center
Houston, TX 77010

A. Danner Frazer , Jr., Esq.
Robert J. Mullican, Esq.
**FRAZER, GREENE, UPCHURCH & BAKER, LLC**
P. O. Box 1686
Mobile, AL 36633

David J. Beck, Esq.
**BECK, REDDEN & SECREST, LLP**
One Houston Center
1221 McKinney St., Ste 4500
Houston, TX 77010

s/ *Marchello D. Gray*
Of Counsel